## NORDYKE & MARMON COMPANY v. WHITEHEAD, ADMINISTRATOR.

[No. 22,523. Filed November 24, 1914. Rehearing denied
March 5, 1915.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.*—A complaint against a manufacturing company for the death of an employe, alleging that defendant hauled coal to its plant in cars drawn over a track by means of a chain and rope attached to a spool or pulley, that the location of the track was such that defendant's employes were required to cross over it and the rope in the performance of their duties, which, by reason of the manner in which the rope was adjusted, they could do without risk or danger, and charging negligence in attempting to pull a car which had left the track back onto the track by means of the rope and chain, to which defendant applied great power, and which was of brittle material and not of sufficient strength to thus pull the car of coal, and was liable to break and be jerked through the air, that while decedent was performing a service pursuant to an order of defendant given with knowledge of what was then being carelessly and negligently done with such car and chain, such chain broke and was hurled a distance of fifty or sixty feet, striking him and producing the injuries complained of and charging that defendant had knowledge of the weakness and defective condition of the chain, but that decedent had no such knowledge, was not open to the objections that the allegations with reference to the strain on the chain were mere conclusions, and that there was no direct allegation that decedent's work required him to be where he was at the time he was injured. p. 9.

2. MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Verdict.—Answers to Interrogatories.*—In an action for the death of an employe who was struck by a chain which broke while being subjected to an unusual strain, and which was alleged to be weak and of insufficient strength for the particular use, answers to interrogatories were insufficient to overcome the verdict for plaintiff, although showing that the chain broke because of a hidden defect that could not have been discovered by the use of ordinary care, and that it did not break because the links were of insufficient size, or because it was overloaded, where other answers were in harmony with the general verdict, since special findings that are inconsistent and contradictory of each other can not control a general verdict. p. 11.

3. APPEAL.—*Evidence.—Weight and Sufficiency.*—It is not within the province of the court on appeal to weigh the testimony in determining whether a verdict is sustained by sufficient evidence,

but merely to determine if there is any evidence to sustain the verdict on each material issue.  p. 13.

4.  APPEAL.—*Review.—Instructions.—Weight of : Evidence.—Testimony of Experts.*—An instruction that the opinions of expert witnesses are not admitted for the purpose of controlling the judgment of the jury, but to be considered for what they are worth in the opinion of the jury when considered with the other evidence in the case, and advising the jury that it could reject the testimony of the expert witnesses, or of any of them, if from all the evidence in the case the jury thought it ought to do so, was not objectionable as tending to discredit such testimony, or as giving to the jury the right to reject same arbitrarily.  p. 13.

5.  APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action to recover for a wrongful death, an instruction defining contributory negligence, and placing on defendant the burden of proving "such contributory negligence on the part of the plaintiff", was not harmful to defendant by reason of the omission of the word "decedent" from the phrase quoted, where it was apparent from the whole instruction that such negligence on the part of plaintiff's decedent was meant.  p. 14.

6.  APPEAL.—*Review.—Instructions.*—Where the court specifically instructed the jury that it had not attempted to embody all the law of the case in any one instruction, certain instructions complained of can not be construed on appeal as purporting to cover all the issues, and were not objectionable on the theory that they omitted one of such issues, in view of the fact that the omitted issue was fully covered in other instructions.  p. 14.

7.  EVIDENCE.—*Privileged Communications.—Waiver.*—In an action to recover for a wrongful death, the testimony of a witness for plaintiff that he was present when an examination was made by the physician and saw bruises upon decedent's body, was not a waiver of the privileged character of the physician's knowledge of the same subject-matter so as to permit the latter to testify. p. 14.

8.  DAMAGES.—*Excessive Damages.*—A verdict will not be set aside on the ground that the damages are excessive, where the amount is not sufficient to indicate that the jury was actuated by prejudice, partiality or corruption.  p. 15.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by Elizabeth Whitehead, administratrix of the estate of Taylor Whitehead, deceased, against the Nordyke & Marmon Company.  From a judgment for plaintiff, the defendant appeals.   (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.)   *Affirmed.*

*Elmer E. Stevenson, E. A. McAlpin* and *Thomas D. Stevenson,* for appellant.

*Clarke & Clarke* and *Miller & Barnett,* for appellee.

SPENCER, J.—Suit by appellee to recover damages for the death of her decedent, alleged to have been caused by negligence on the part of appellant. A trial by jury resulted in a verdict for appellee in the sum of $3,600, and from a judgment on such verdict this appeal is prosecuted.

It is first urged that the trial court erred in overruling appellant's demurrer to the second paragraph of complaint. This paragraph, omitting the formal parts, alleges

1. the ownership and operation by appellant of a manufacturing plant in the city of Indianapolis; that in this plant it uses coal for the generation of steam for power and heating purposes; that such coal comes to appellant in large coal cars and is delivered to it on what is known as the Belt Railroad in said city, from which railroad appellant transfers the loaded cars of coal into its yards over a private railroad track owned and controlled by it; that for the purpose of moving these cars appellant has installed, and owns and operates, an appliance or piece of machinery consisting of a large cylinder or spool operated by steam power and to which is attached a long heavy rope with a chain at the end; that this chain is fastened to the loaded car at a point some twelve inches from the ground and by applying power to the spool or cylinder the rope is wound up and the car pulled over the track to the desired point; "that this track lies along one side of the numerous buildings in defendant's plant and within two or three feet thereof and near doors or openings through which the many employes of defendant are constantly passing; that said rope is placed on or within an inch or two of the ground and is held there by pulleys or spools so that the employes could pass in and out of said building through said doors and step over said rope without risk or danger; that when said appliance is being used defendant's many employes, including plaintiff's decedent,

were compelled to and did pass over the said rope under direct orders from the defendant so to do.'' The complaint further charges that on January 7, 1909, while appellant was moving a loaded car of coal in the manner above described the car ran off the track; that appellant then applied great power to the rope and chain and endeavored to pull the car back onto the track; that the chain thus used by appellant on said date was weak and not of sufficient strength thus to pull the car of coal; that the links of the chain were made of brittle material and were of such size and shape as not to be sufficient for such use; that the chain was likely to break and give away and to be jerked through the air near said building and the entrances thereto; "that plaintiff's decedent, a man sixty-two years of age, was employed by defendant in the building adjoining said track; that he was ordered and directed by defendant, its agent and foreman, who knew what was then being so carelessly and negligently done with said car and chain, as above set forth, to remove some rubbish from said building to a dump on the outside thereof; that plaintiff's decedent, who was then acting as so ordered and directed, had gone with said lot of rubbish to said dump; that as he was returning therefrom the chain, which was so carelessly and negligently fastened to said car and to which said power was so carelessly and negligently applied, broke and gave away by reason of its being too weak to perform the said services required of it as aforesaid; that said chain so attached to said rope, broke and gave away, and the said chain was jerked, hurled and pulled through the air for a distance of fifty or sixty feet", striking appellee's decedent and producing the injuries which resulted in his death. The complaint also charges knowledge on the part of appellant as to the weakness and defective condition of the chain and the danger therefrom and avers that appellee's decedent had no such knowledge.

Counsel for appellant contend that every averment in this pleading relative to the strain on the chain is simply and solely a conclusion on the part of the pleader, not based on any facts which are averred directly; also that the paragraph does not show by any direct allegation the fact that the work of the decedent in any way required him to be where it is alleged that he was when struck by the rope or chain. The pleading before us is not a model one but we can not agree that it is open to the objections urged by appellant's counsel. It fairly informed appellant of the negligence charged against it and is sufficient to show that at the time he received his injuries appellee's decedent was performing one of the duties of his employment in obedience to appellant's order and that in so doing he was using a passageway provided and maintained by appellant for that purpose. This is the necessary and only reasonable inference to be drawn from a fair construction of the paragraph as a whole and is sufficient to sustain the pleading as against a demurrer for want of facts. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 602.

It is next contended that the answers returned by the jury to interrogatories which were submitted to it are in conflict with the general verdict and that appellant is 2. entitled to a judgment on such answers. In support of this contention appellant takes the position that the answers to interrogatories affirmatively show: (1) that the chain in question broke because of a hidden or concealed defect in one of the links thereof, of which defect appellant had no knowledge and could not have acquired knowledge by the exercise of ordinary care; and (2) that said chain did not break because its links were insufficient in size or because it was overloaded. It is true that the jury found specially that the chain broke because of a hidden or concealed defect consisting of partial crystallization in one of its links; that this crystallization could not have been dis-

covered in any way before the link broke; that the chain in question was made of good material and had been in use about four years; that when chains break because of over-strain there is always a shrinkage in the diameter of the link at the point where the break occurs; that no such shrinkage was present in this case and that the link in question did not break at its point of smallest diameter; that at its point of breakage said link was not worn down any in size. But the jury further found that when the chain was used in the effort to draw the loaded car of coal back onto the track, it was subjected to other than a straight pulling strain; that this was the first strain of the kind to which the chain had been subjected; that the chain was insufficient and too weak for the use and sudden strain to which it was then put, and that at the time of the accident it was pulling more than its breaking strength. The rule is well settled that "It is the duty of the court to reconcile the special answers with each other and with the general verdict, if it can reasonably be done; but if such special findings are inconsistent and contradictory of each other they will not control the general verdict." *William Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 481, Ann. Cas. 1913 A 49. Conceding that some of the answers before us tend to support appellant's contention, yet the same are inconsistent with and are nullified by other answers which sustain the general verdict. So far as the special findings are in harmony with each other, they tend to uphold the general verdict of the jury that the chain which broke was, at the time, being subjected to a twisting strain, greater than that to which it was ordinarily put or designed to withstand, and that it broke because of its negligent use for the purpose at hand. Appellant's motion for judgment on the special findings was properly overruled.

The first ground of appellant's motion for a new trial is that the verdict of the jury is not sustained by sufficient evidence. The evidence given at the trial is voluminous and,

as is usual in cases of this character, there is sharp conflict on many points. It is not within our province, however, to weigh this testimony but only to determine whether there is any evidence which will justify a finding for appellee on each material issue. These issues will readily appear from what has been said heretofore and a careful study of the record convinces us that there is some evidence to warrant the finding of the jury thereon. We deem it unnecessary to extend this opinion with a review of all the testimony given.

Complaint is also made of certain instructions given by the court on its own motion. Instruction No. 11 told the jury that: "The opinions of expert witnesses are admissible in evidence for the consideration of the jury. The opinions of such witnesses are not admitted for the purpose of controlling the judgment of the jury, but to be considered for what they are worth in your opinion, when considered with the other evidence in the case. If you think from all the evidence in the case that you ought to reject the testimony of the expert witnesses or any of them, you have the right to do so." Appellant singles out the last sentence of this instruction and urges that it tends to discredit expert testimony and gave to the jury the right arbitrarily to reject the testimony of expert witnesses without cause or reason. If true, the instruction applies equally to the expert testimony offered by appellee as well as that of appellant, but a reading of the instruction as a whole is sufficient to show the fallacy of appellant's contention. The jury is instructed to consider all the evidence given in the cause and then to determine what evidence is entitled to the greater consideration. This is the law. *Winklebleck* v. *Winklebleck* (1903), 160 Ind. 570; *Goodwin* v. *State* (1884), 96 Ind. 550, 561.

Instruction No. 17 defines contributory negligence as the "want of ordinary care by the decedent and causal connection between such want of care and the injury complained

of'' and then places on appellant the burden of proving "*such contributory negligence* on the part of the plaintiff.'' (Our italics.) It is clear that the phrase last quoted could only refer to negligence on the part of plaintiff's decedent and we can not agree that appellant was harmed in any way by the omission of the word ''decedent''.

It is urged against other instructions that they assumed to tell the jury it should find for appellee if certain facts were found to be true, and that in so doing said instructions omitted the element of assumption of risk. This issue was fully covered in other instructions given and in instruction No. 7 the jury was told specifically that ''the court has not attempted to embody all the law of the case in any one instruction. Therefore in construing any single instruction, you must consider it in connection with all the other instructions given you and construe them in harmony with each other.'' We can not, therefore, construe the instructions complained of as purporting to cover all the issues in the case. *Marietta Glass Mfg. Co.* v. *Pruitt* (1913), 180 Ind. 434.

Appellant further contends that the court erred in sustaining appellee's objection to certain questions propounded to appellant's witness, Dr. Rutledge, who attended the decedent immediately after his injury. Appellee's witness, Julius Whitehead, son of the decedent, had testified that when Dr. Rutledge examined his father, he, the witness, was present and saw certain bruised spots on his father's body. Appellant sought to prove by the physician that no bruises were found and the court excluded the testimony on the ground that it was privileged. It is contended by appellant that by offering the evidence of the witness, Whitehead, appellee waived the privileged character of the physician's testimony as to the same subject-matter. We can not so hold. The rule that all facts learned by a physician while examining or conversing with a patient are

to be treated as confidential is a beneficent one and one which is not to be lightly broken down. We see no reason to hold that the circumstances before us are sufficient to bring this case within any recognized exception to the rule above stated or to create a new exception thereto. *Indiana Union Traction Co.* v. *Thomas* (1909), 44 Ind. App. 468, 475.

Other questions presented as to the admission and exclusion of evidence have been examined with care and no error found. Nor is the amount of the verdict sufficient to indicate that the jury was actuated by prejudice, partiality or corruption.

8.

Judgment affirmed.

NOTE.—Reported in 106 N. E. 867. As to what is excessive verdict in action for death by wrongful act, see 18 Ann. Cas. 1209. As to waiver of privilege of communication to physician by bringing action or introducing evidence concerning disease or injury, see Ann. Cas. 1915 A 438. As to confidential and privileged communications of physicians and surgeons, see 33 Am. Rep. 435. See, also, under (1) 26 Cyc. 1386; (2) 26 Cyc. 1513; 38 Cyc. 1926; (3) 3 Cyc. 348; (4) 38 Cyc. 1736: (5, 6) 38 Cyc. 1778; (7) 40 Cyc. 2399: (8) 13 Cyc. 121.