PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS
RAILROAD COMPANY *v.* EDWARDS,
ADMINISTRATRIX.

[No. 23,449.    Filed January 4, 1921.]

1. MASTER AND SERVANT.—*Action for Servant's Death.—Evidence.—Sufficiency.*—In an action against a railroad company under the federal Employers' Liability Act (§8657 *et. seq.,* U. S. Comp. Stat. 1916, 35 Stat. at L. 65) for the negligent death of its servant, a judgment for the plaintiff will be reversed upon a showing by the defendant that the decedent's death, under the evidence adduced, resulted from mere accident, or that the cause was left to conjecture, or that it was not the result of any negligent acts pleaded. p. 63.

2. MASTER AND SERVANT.—*Negligence.—Contributory Negligence.—Sufficiency of Evidence.—Inferences.*—In an action for the death of a bridge repair man, who, while operating a derrick attached to a push car, attempted to change his position and as he did so the crank slipped from the derrick and he fell to his death, the evidence is reviewed and held sufficient to warrant an inference that the decedent attempted to change his position to better his advantage, that such change would have been unnecessary with two men at the crank as was customary and that the sudden release of the crank caused him to lose his balance and fall; and, under such circumstances, the decedent was not contributorily negligent as a matter of law. pp. 63, 64.

3. NEGLIGENCE.—*Proof.—Circumstantial Evidence.*—Though the plaintiff has the burden of proof as to negligence in the respects charged, such proof may be made either directly or circumstantially. p. 64.

4. MASTER AND SERVANT.—*Negligence.—Adequacy of Working Force.—Jury Question.*—In view of evidence tending to show that the plaintiff's decedent fell to his death as he attempted to change his position to better his advantage, that as he did so the crank of a derrick that he was operating slipped from the shaft, causing him to fall, and that the change of position would have been unnecessary with two men at the crank as was customary, the question whether the defendant was negligent in failing to furnish an adequate working force for such work was one of fact. p. 64.

5. MASTER AND SERVANT.—*Contributory Negligence.—Federal Employers' Liability Act.*—In an action under the federal Employers' Liability Act (§8657 *et seq.,* U. S. Comp. Stat. 1916,

35 Stat. at L. 65) for the negligent death of a servant, the decedent's contributory negligence is to be considered only in mitigation of damages unless such negligence is shown to be the sole cause of the injury.   p. 65.

6.   TRIAL.—*Instructions.—Servant's Assumption of Risk.—Sufficiency.*—In an action under the federal Employers' Liability Act (§8657 *et seq.*, U. S. Comp Stat. 1916, 35 Stat. at L. 65) for the death of a servant, an instruction on the doctrine of assumption of risk clearly pointing out the negligence relied on by the plaintiff, and then stating under what circumstances the decedent would be held to have assumed the risk of such negligence, was not erroneous as calculated to mislead because of a general statement therein, in defining the doctrine, as to the assumption of defects as to appliances and place of employment—matters not in issue—where from the instruction the jury could not have understood that there was any claim of failure in the defendant's duty in furnishing appliances or the place to work.   p. 66.

7.   EVIDENCE.—*Nonexpert Testimony.—Competency.*—In an action for the negligent death of a servant, based partially on the inadequacy of the working force, the testimony of a former foreman of the work, when asked the reason for his using two men in the position in which the decedent was working alone when he met his death, answered that, because of the great weight of the timbers being handled it required that number of men in his opinion, was not objectionable as being a conclusion invading the jury's province, where the witness not only showed himself to be well acquainted with the work, but also detailed all the facts connected therewith, since, though the witness were a nonexpert, his answer was entitled to some weight as an opinion from facts observed that could not be fully described to the jury.   p. 66.

8.   EVIDENCE.—*Master and Servant.—Adequacy of Working Force.—Opinions.*—Since the number of men necessary to operate a hand derrick on a railroad push car is not a matter of common knowledge, a witness shown to have had long experience in the use of such derrick and a special knowledge of the subject-matter, may give an opinion thereon as an expert, the weight of which is for the jury.   p. 67.

9.   EVIDENCE.—*Negligent Death of Servant.—Opinions of Coworkers.—Admissibility.*—In an action for the negligent death of a bridge repair man, who, while operating alone the crank of a hand derrick, fell to his death when the crank slipped from the shaft, the plaintiff's theory being that the accident was partially due to the inadequacy of the working force, the statements of a coworker, who with another operated the other

crank of the derrick, that he was pretty well exhausted by the work and that it took all the strength he had, were not mere opinions, but conclusions of fact founded on personal feelings incapable of being plainly stated to the jury.    p. 67.

From Hendricks Circuit Court; *George W. Brill,* Judge.

Action by Anna E. E. Edwards, administratrix, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company. From a judgment for the plaintiff, the defendant appeals. *Affirmed.*

*Samuel O. Pickens, Charles W. Moores, R. F. Davidson, Owen Pickens* and *D. P. Williams,* for appellant.

*Wymond J. Beckett, Joe R. Beckett* and *Thad S. Adams,* for appellee.

MYERS, J.—Appellee brought this action against appellant for damages on account of the death of her decedent alleged to have been caused by the negligence of appellant. The issues submitted to a jury were formed by an amended fourth paragraph of complaint, answered by a general denial, and by a paragraph averring that appellant and appellee's decedent, at the time of the injury resulting in death, were engaged in interstate commerce, and under the federal Employer's Liability Act (§§8657-8665 U. S. Comp. Stat. 1916, 35 Stat. at L. 65, 66, .291) decedent assumed the risks of his employment. There was a verdict in favor of appellee followed by a judgment in her favor. Appellant's motion for a new trial was overruled, and this ruling is the only error relied on for a reversal of the judgment.

The only questions presented in support of the motion for a new trial are: (1) Want of evidence to support the verdict; (2) that the court erred in giving instruction No. 15 on its own motion; (3) admission of certain evidence over appellant's objection.

Appellant in support of its first contention insists: First, that the evidence shows that appellee's decedent met his death as the result of a mere accident; second, that the evidence left the cause of decedent's injuries to conjecture; and, third, that his death was not the result of any acts of negligence charged in the complaint citing *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A 474, and other cases.

The evidence tends to show that at about eleven o'clock on the morning of July 17, 1913, decedent met with injuries which caused his death the following morning at eight o'clock; that at the time he received his injuries he was in the employment of appellant as a member of one of its bridge gangs, and engaged in repairing one of appellant's bridges located about six miles west of Spencer, Indiana. This gang regularly consisted of ten men and a foreman, but on the day decedent was injured the gang consisted of eight men, who were, at this particular time, replacing old stringers with new ones. In order to keep the traffic on the road going, an old stringer would be taken out and a new one immediately put in its place. A new stringer was composed of three pieces of pine timber, each eight inches thick and twenty inches wide, bolted together, and estimated to weigh from 1,700 to 1,800 pounds. The old and new stringers were handled by means of a crab derrick fastened to a platform of an ordinary push car. The boom or mast of the derrick, to which a rope was attached, extended out over the side of the car. The new stringers were framed for use a short distance from the bridge. The car carrying the derrick was run down the track near the stringer, and the rope from the derrick hitched to it in such manner that the men on the car, by means of the derrick, raised it to a swinging position and then held it until other men

of the gang pushed the car, thus carrying the stringer to the place where it was to be used in the bridge. On the morning of the accident, one old stringer had been removed from the bridge and a new one brought in to take its place. The crab had no dog or ratchet, and the load was raised, lowered, or held in place by man power applied to a shaft by means of two cranks, one on each end of the shaft. At times a bar was used to lock the wheels of the crab and hold the load. In handling these stringers, in order to balance the car and keep it from turning over and leaving the track, it was necessary for one man to sit on the end of a board fastened to the push car and extending out several feet on the side opposite the load. The men who handled the crab stood on the platform of the car, and, prior to the day of the accident, four men, two at each crank, did that work. The two at either crank faced each other, and, thus working together, two would pull while two would lift all the time. When the wheels of the crab were locked, as stated, or the crab was not in use, the cranks, which were loosely fitted to the shaft, were removed from the shaft for the purpose of avoiding danger in case they unexpectedly revolved.

At the time of the accident, under the direction of the foreman, the members of the gang were engaged as follows: Two were acting as flagmen; one at each of the bolsters on which each end of the stringer would first rest; one on the balancing board; and decedent and two others were handling the cranks. Decedent alone was operating the crank on the east end of the crab and facing south. His only experience at this particular work was on this bridge, but the length of time does not appear. The new stringer had been lowered almost to the bolsters when, on order of the foreman, it was raised about three inches. The derrick men were ordered to hold it in that position, and they did

until directed by their foreman to lower it. The order to lower was given, and decedent started to change his position or, as said by one witness, he "swung around to the left," when the crank he was operating came off the shaft and fell out of his hands. The stringer dropped onto the bolsters, and decedent fell from the car onto a piling some twenty-five feet below, whereby he was fatally injured.

The regular foreman of this bridge gang was not with the men on the day of the accident, but under his direction some six or eight old stringers had been removed from the bridge and replaced by new ones. He testified, in substance, that he had used four men, two at each crank, because in his opinion it required that number, and that three men were insufficient, because the great weight of the stringers called for the full strength of three men for such a period of time that they would likely become exhausted and weakened or, to use the language of the witness in part; "that period of duration (referring to the time these men had held the stringer in a swinging position) would work on a man until he would be so weak he probably would go blind, or couldn't see, or something would happen to him."

The complaint, after stating the business in which appellant was engaged, describing the bridge, the work in which the bridge gang was engaged, the specific work of the decedent, the derrick and the purposes for which it was being used, charged that appellant was negligent: First, in operating the crab derrick with an insufficient number of men; second, in directing the decedent to operate one of the cranks to the derrick without any assistance, which work, on account of the weight of the stringers and being unassisted, required him to step from one side of the platform to the other and around the end of the shaft and face in the op-

posite direction; that, while thus changing his position, the crank was likely and liable to slip off and throw him off of the platform; that the work of decedent, unassisted, was dangerous and known to be dangerous by appellant, which danger was unknown and unappreciated by decedent; that, while decedent was thus at work and while stepping from one side of the platform to the other in order to exert his full power as was necessary for him to do, the crank slipped off of the shaft and threw him off of the platform to the ground and water below, a distance of twenty-five feet, thereby inflicting injuries upon his body from which he died in a few hours.

This statement of the record and appellant's contentions in support of its motion for a new trial will serve to show how the questions arise and will suffice as a basis for our conclusions. It will be noticed 1. that appellant asserts three reasons why the evidence is insufficient to support the verdict. Either of these reasons, if sustained, would require a reversal of the judgment.

After a careful review of the evidence in this case, we are convinced that the jury might have inferred that decedent attempted to change his position on the platform for the purpose of bettering his 2. advantage to furnish power and greater assistance in handling the load, and that the sudden release of the crank from the shaft caused him to lose his balance and fall. Also, with two men at the crank, decedent would have no occasion to change his position.

We are further convinced that there was evidence before the jury from which it could find by whom decedent was employed when injured, the work in which he was engaged when injured, the time when he was injured, the place where the injuries occurred, how he was injured, the cause of his injuries, and the extent

of his injuries. Consequently the doctrine announced in the cases cited by appellant do not control the result of this case.

As to the negligence of appellant, of course it was incumbent upon appellee to prove that appellant was negligent in the respects charged in the complaint, but it was not necessary that such proof be made by direct evidence, as these facts may be made to appear either directly or circumstantially. *Cincinnati, etc., R. Co.* v. *McMullen* (1889), 117 Ind. 439, 20 N. E. 287, 10 Am. St. 67; *Chicago, etc., R. Co.* v. *Mitchell* (1916), 184 Ind. 383, 391, 110 N. E. 215; *Pittsburgh, etc., R. Co.* v. *Parish* (1902), 28 Ind. App. 189, 200, 62 N. E. 514, 91 Am. St. 120.

This court in *Pennsylvania Co.* v. *McCaffrey* (1894), 139 Ind. 430, 439, 38 N. E. 67, 29 L. R. A. 104, quotes with apparent approval from Patterson, Railway Accident Laws §297, as follows: " 'It is the duty of the railway not to increase the perils of its servants by the inadequacy of the force employed in any particular work; * * *.' " In the instant case, the complaint charges that appellant violated that duty when its foreman assigned three men to operate the derrick instead of four, and as there was some evidence to support this charge, the question thus presented, under all the circumstances shown, was clearly one of fact for the jury. *Illinois Central R. Co.* v. *Langan* (1913), 116 Ky. 318, 76 S. W. 32; note 3, 48 L. R. A. 393; 4 Thompson, Com. on Negligence §4768.

Appellant further insists that the evidence clearly shows that decedent's death was caused solely by the manner in which he used his place to work, citing *S. W. Little Coal Co.* v. *O'Brien* (1917), 63 Ind. App. 504, 113 N. E. 465, 114 N. E. 96. Thus appellant suggests that decedent was guilty of contributory negligence. There is no evidence tending to show

anything unusual in the manner in which decedent was using the place of work, or the manner in which he handled the crank. One witness says in substance that "we had let the stringer down a little too far, and we had orders to raise it. When we attempted to raise it, decedent fell." All of the witnesses agree that the decedent fell when the men at the cranks sought to reverse the motion of the shaft or drum of the crab. These facts indicate the purpose of decedent in making the change from one position to the other, and it was while making this change that the crank came off. Whether it slipped off, or whether it was pulled off by the decedent, all of the facts and circumstances lead to the inference that it was the freeing of the crank from the shaft, while decedent was prosecuting the work assigned him, that caused him to fall.

Moreover, it must be kept in mind that this action is under the federal Employer's Liability Act of 1908, ch. 149. By §3 of that act contributory negligence is to be considered only in mitigation of damages (§8659 U. S. Comp. Stat. 1916, 35 Stat. at L. 65) ; *McDonald* v. *Railway Transfer Co.* (1913), 121 Minn. 273, 141 N. W. 177; *New York, etc., R. Co.* v. *Niebel* (1914), 214 Fed. 952, 131 C. C. A. 248; *Pennsylvania Co.* v. *Cole* (1914), 214 Fed. 948, 131 C. C. A. 244; *Grand Trunk, etc., R. Co.* v. *Lindsay* (1914), 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C 168, unless such negligence is shown to be the sole cause of the injury and death. *Kendrick* v. *Chicago, etc., R. Co.* (1914), 188 Ill. App. 172; *Ellis' Admr.* v. *Louisville, etc., R. Co.* (1913), 155 Ky. 745, 160 S. W. 512. For the reasons suggested, appellant's second position cannot be sustained.

Assumption of risk was the subject of instruction No. 15. The particular part of this charge criticized by

appellant is general in its terms as to risks assumed as well as risks not assumed by an employe in the prosecution of the work he is employed to perform. The statement therein that "the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work" is asserted to be erroneous, for the reason that there is no charge of negligence in the complaint with respect to providing a safe place of work and suitable and safe appliances. True, negligence is not charged with respect to the place of work or the appliances furnished by the master. Nor could the jury have understood from this instruction that there was any claim of failure of duty on the part of the master in either of these particulars. The instruction clearly pointed out the particular negligence relied on by appellee, and then proceeded to tell the jury under what circumstances the decedent would or would not be regarded as having assumed the risk. This instruction was not calculated to mislead the jury or cause it to take into account a matter not within the issues.

As to claimed erroneous admission of testimony, appellant has called our attention to four questions put by the appellee to her witnesses, and, over appellant's objection, were answered. One of these witnesses, Joseph C. Clark, in 1906, was made foreman of one of appellant's bridge gangs, and continued in that position until he was elected clerk of Owen county, which was after the accident. It appeared that Clark was foreman during the time most of the work was done on this bridge, and as such foreman had directed the work of removing and replacing stringers. He was asked why he used four men, two on each crank of the crab, in handling the stringers. He answered, "Because of the extra weight, or the great weight of these heavy stringers, and the pulling

of those men with each other, it required that to do the work I thought." The objection urged to the question was that it called for a conclusion, it invaded the province of the jury, and the witness was not shown to be qualified to answer as an expert. This witness had shown himself to be well acquainted with the character and manner of doing the work required, as well as the work being performed by the decedent. He had given to the jury in detail all the facts connected therewith. Therefore, if the answer be regarded as an opinion of the witness as to the number of men reasonably necessary to handle the derrick, the answer was not incompetent even though he be a nonexpert. This is so because of apparent influences discernible to the observer and from the experience of the witness, which could not be fully described to the jury, but entitled to some weight in forming an opinion. *City of Indianapolis* v. *Huffer* (1868), 30 Ind. 235; *Jenney Electric Co.* v. *Branham* (1896), 145 Ind. 314, 41 N. E. 448, 33 L. R. A. 395; *Archer* v. *Ostemeier* (1914), 56 Ind. App. 385, 105 N. E. 522; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 554, 37 N. E. 343.

Moreover, the subject-matter inquired about was not one of common knowledge, and the witness was shown to have had long experience and special knowledge of the subject-matter and properly qualified to give an opinion as an expert, the weight of which was for the jury. *Louisville, etc., R. Co.* v. *Berkey* (1894), 136 Ind. 181, 35 N. E. 3.

Witness Dyar, who with Mr. Liter had charge of the other crank to the crab, over appellant's objection that the question called for the opinion of the witness as well as a speculative answer, answered, "Well, it took about all the strength I had." And this same witness, over appellant's objection that it was immaterial under the issues what the witness' physical

condition was, as it did not tend to prove the physical condition of decedent, answered: First, "Well, we were holding the stringer, about all we could do. We had been holding it some few minutes;" and second, "Well, I was pretty well exhausted." We do not regard these answers as mere opinions, but conclusions of fact founded on his personal feelings, difficult of description, or incapable of being plainly stated to the jury. Their admission was not error.

We therefore hold that appellant has not shown reversible error, and the judgment is affirmed.