BOONVILLE COLLIERIES CORP. *v.* REYNOLDS ET AL.

[No. 19,024. Filed January 12, 1960. Rehearing denied February 23, 1960.]

332

*Paul F. Mason,* of Rockport, *Kenneth W. Weyerbacker,* of Boonville, *Iglehart & Hewins,* and *Elvin H. Hewins,* of Evansville, for appellant.

*Ford Gale Lacey,* of Boonville, and *Sidney R. Lindsey,* of Rockport, for appellees.

KELLEY, J.—This action originated by the filing of a complaint by appellees alleging that they were the owners of certain described real estate in Warrick

County, Indiana, and that there is located thereon a concrete block building which is used by appellee, William C. Reynolds, as an auto repair garage; that the appellant corporation is engaged in the business of mining coal by the strip-mining method, and owns or leases real estate "located near that of the plaintiffs (appellees)."

Said complaint further alleges, pertinent to the instant enquiry, as follows:

"3. That during the month of September, 1954, and on numerous occasions up to and including the present time, the defendant, Boonville Collieries Corporation, has detonated large amounts of explosives, the exact nature and/or kind of such explosives and the exact method of so detonating said explosives being unknown to the plaintiffs, upon property being mined by said defendant, as a result of which blasting the said concrete block building of the plaintiffs was violently and severely shaken, jarred and rocked, thereby causing the entire walls, roof and floors of said concrete block building to break and crack and to become unsafe."

It is then alleged that as a result of the "blasting" by appellant, said concrete block building was damaged to the extent of $7000.00 and the garage "business" of appellee, William C. Reynolds, was damaged to the extent of $5000.00. Judgment of $12,000.00 was prayed for.

Appellant attacked said complaint by its demurrer predicated on the ground that said complaint did not state facts sufficient to constitute a cause of action. This demurrer was overruled and the issues, appropriately made, were submitted to the jury for trial, resulting in a verdict for appellees. Consistent judgment followed.

The error first assigned by appellant is the overruling of said demurrer. Appellant urges the reasons set forth

in the memorandum to its demurrer, namely, that the complaint alleges no facts showing any fault, wrongdoing, or negligence on the part of appellant; that the only allegation of activity by appellant was that on numerous occasions it detonated large amounts of explosives; and that there is nothing unlawful or wrongful in detonating large amounts of explosives on land devoted to mining operations.

Appellees counter by urging that the complaint proceeds upon the theory that one engaging in an activity involving a high degree of risk or harm to others in spite of the use of all reasonable care, such as detonating large amounts of explosives, is strictly liable for harm resulting therefrom. That while there are no Indiana decisions directly in point, the historical treatment of like problems by our courts leads to the conclusion that the theory of said complaint is in fact the law of this State.

We commend counsel in this appeal for the thorough, painstaking and digestive briefs submitted herein. The detailed examination and discussion in the briefs of many pertinent authorities and treatises is indicative of copious labor bestowed by counsel upon the subject now under surveillance. The required study and contemplation thereof by us has, of necessity, occasioned deep concern for the correct rule to be adhered to and has, also, provided a barrier to an expeditious opinion. The present opinion will fail to reflect either the artistry of counsel or the expressed work of the court. And this for the reason that all of our extended study and application of the many authorities cited in the briefs has but led us to the simple conclusion that in determining the validity of the demurrer in this case we must confront the allegations of the complaint with the guide rules furnished by our court in *Button* v. *Pennsylvania*

*Railroad Company* (1944), 115 Ind. App. 210, 57 N. E. 2d 444.

The case last cited involved consideration of a demurrer to a complaint charging that the railroad defendant *unnecessarily* fired its locomotive "at a time and place" where the resulting dense clouds of smoke covered the highway over which appellant was riding in an automobile, blinding the driver of the automobile so that he could not follow the curve in the highway and ran the same off the highway into a utility pole, with consequent injuries to appellant. While the facts in that case are dissimilar, in nature of subject, to those alleged in the complaint here before us, yet some of the principles declared by the court seem vital to the consideration of the present question. The court said that the aforesaid charges of the complaint constituted negligence. Then it next announced one of the principles we consider appropriate here:

"... It all resolves itself down to the *fundamental doctrine* that one is entitled to the reasonable use of his property even if such use incidentally injures another, but *liability for the injury* arises when such injury is caused by the *unreasonable use* of such property *in a manner* the user *should have reasonably anticipated* would result in damage to another." (Our emphasis.)

The court then dwelt upon the matter of foreseeability as a basis for liability and said:

"... That foreseeability is an essential element of proximate cause and that *no liability exists for an injury that could not reasonably have been anticipated as the proximate result of one's conduct,* is no longer a matter of debate in Indiana." (Emphasis supplied.)

Measured by the aforesaid principles enunciated in the Button case, it is clear that the aforementioned complaint wholly fails to state a cause of action. There is nothing alleged in the complaint which either directly asserts or by factual allegation establishes that (a) the detonation by appellant of explosives was an unlawful act; (b) the detonation of the explosives was performed and occasioned by appellant in such a manner, way or place as to constitute an unreasonable use or handling of the explosives so that appellant should have reasonably anticipated a resulting damage to appellees; (c) the circumstances were such that appellant should have foreseen that the detonation by it of the explosives would proximately result in damage to the appellees' property.

The complaint under review simply says that appellees owned real estate with a concrete block building thereon; that appellant mines coal; that appellant owned or leased land "near" that of appellees; that appellant detonated large amounts of explosives upon "property" being mined by it; that as a result of the "blasting" appellees' building was damaged and appellee William C. Reynolds' "business" was damaged. There is no allegation of any physical trespass by appellant upon the building, business or land of appellees. There is no charge that the alleged acts of appellant were in any way unlawful nor any statement of facts or circumstances showing such acts to be unlawful. There are no allegations nor any statement of facts or circumstances showing the character of the place where the detonation took place or the surroundings thereof or that the place and surroundings were such as to render the detonation of the explosives unduly dangerous or inappropriate at such place. There are no facts alleged showing that the detonation took place under such cir-

cumstances and at such place as to necessarily expose appellees' property to the danger of injury or damage.

The use of the word "near," as it appears in the complaint, adds nothing to render it efficacious as a statement of a cause of action. The complaint avers that appellant owns or leases real estate located "near" that of the appellees, but whether that real estate is the land that is being mined by appellant and upon which the detonations took place is not stated. Assuming, however, that the detonations did occur on the real estate owned or leased by appellant which was "near" the land of appellees, yet, the question is not how "near" appellant's land was to appellees' real estate but how "near" to appellees' building were the complained of detonations or "blastings." For all that is stated in the complaint, the land owned or leased by appellant may have been a very large, expansive and extensive tract of land and, although such land was "near" that of the appellees, yet the detonations may have occurred many miles away from the building located on appellees' land. It was not appellees' land that is averred to have been damaged by the detonations but their building. So, it would seem that in order to show circumstances under which the detonation by appellant of the explosives was unreasonable and such as that appellant could or should have anticipated injury or damage therefrom to appellees' property, allegations showing the character of the territory surrounding appellees' property, whether it was populous, a business district, a residential area, a farm area, or an open expanse of land, together with allegations of the situs, location or position thereon of appellees' building with relation to the scene or place of the detonation of the explosives by appellant, were necessary for the proper statement of a cause of action. Such facts and circum-

stances should be alleged also to establish that appellant should have foreseen that the detonation of explosives under such conditions would proximately result in damage to appellees or their property. Appellees vigorously insist, however, that the case stated by them is one of strict or absolute liability and the aforesaid Button case is not controlling because there was no allegation in the complaint in that case of conduct which was "inherently dangerous and ultrahazardous." It is important in this regard to steadfastly maintain in mind that we are now dealing with the sufficiency of the allegations of a complaint to state a cause of action and not the general pertinent substantive rules of law which may be applicable upon the trial of the closed issues of the case. Under the conditions of the modern day and particularly in some pursuits, such as highway construction and mining, blasting of explosives is not only lawful and permitted but is often a necessity. See *George J. Reynolds et al.* v. *W. H. Hinman Co.* (1950), 145 Supreme Judicial Court of Maine 343, 75 A. 2d 802, 811; *Cary Bros. & Hannon* v. *Morrison* (1904), 129 Fed. (Cir. Ct. 8th), 177, 180, 181. Primordially, appellees depend heavily upon *Rylands* v. *Fletcher* (1866), L. R. 1 Ex. 265, 1868, L. R. 3, H. L. 330, as establishing the principle that "one who engages in an 'ultrahazardous' or 'inherently dangerous' activity is strictly liable for the harm caused thereby."

In the latter mentioned case it appeared that on a site of an old mine, defendant caused to be constructed a large reservoir for the collection of water. Apparently, the reservoir was not properly or sufficiently reinforced and it gave way, flooding the said shaft and mine. In substance, it was held that one who subjects his land to non-natural uses by bringing or keeping thereon something "likely to do mischief if it escapes" must

keep it at his peril and is "prima facie" answerable for damage which is the "natural consequence" of its escape. The case had been variously attacked and defined by the courts and legal authors. Many writers and some of the courts have taken the position that the language used in the case does not warrant a rule of absolute liability and that the case could have been decided upon the ground of negligence. 33 Harvard Law Review (1920), pages 683, 684. Furthermore, it is now generally considered that the rule undertaking to declare absolute liability of persons engaged in blasting was formulated long before the modern development of the wide and full scope of the law of negligence.

> "That law is very modern—so modern that even the great judges who sat in Rylands v. Fletcher can have had but an imperfect sense of its reach and power. In its modern development the emphasis which the conception of due care *according to the circumstances* throws on the special facts of the case . . . so justifies and encourages the natural human proclivity to argue *post hoc propter hoc* that as practical a matter a defendant must have been a very prudent man indeed to escape the suggestion . . . that *in the light of the facts before him* he should have thought of this or that danger and provided against it." (Some emphasis ours). 29 Harvard Law Review (1916), 801, 805. See, also, 26 N.D.L. (1950, 1951), 572, 574, 575; 33 Harvard Law Review (1920), 542, 555."

Both parties quote from Dean Prosser's Law of Torts, 1941 and 1955 editions, wherein he discusses the effect, meaning and application of the rule announced in the *Rylands* v. *Fletcher* case, *supra*. Some of his declarations possess vital appropriateness to the particular question now at hand, namely, the sufficiency of appellees' complaint to state a cause of action. He said, in part, at pages 330-331 of the 1955 edition:

"In determining what is a 'non-natural use' the English courts have looked not only to the *character of the thing or activity in question,* but ■ also to the *place* and *manner* in which it is maintained and *its relation to its surroundings.* . . . The *place* where all this occurs, the customs of the community, and the *natural fitness or adaptation of the premises for the purpose,* all are *highly important in determining whether the rule applies.* . . . Coal mining, gravel pits, . . . are regarded as natural uses of the particular land, since that is what such land is for; and *it is only when the methods adopted are unusual or abnormal,* . . . that the rule is held to apply. In short, what emerges from the English decisions as the 'rule' of Rylands v. Fletcher is that the defendant will be liable when he damages another by a thing or activity *unduly dangerous and inappropriate to the place* where it is maintained, *in the light of the character of that place and its surroundings.*" (Emphasis supplied.)

Appellees make reference to Restatement of the Law of Torts, §§519 and 520, as having adopted the rule of absolute liability urged by them herein. Dean Prosser, in the 1955 edition of his work on Torts, on pages 335 and 336 thereof, recited, in part, the statement found in said §519 of said Restatement of the Law of Torts, and then continues, significantly:

"This goes beyond the English rule in *ignoring the relation of the activity to its surroundings,* and falls short of it in the insistence on extreme danger and the impossibility of eliminating it with all possible care. *The shift of emphasis is not at all reflected in the American cases,* which have laid quite as much stress as the English ones *upon the place where the thing is done.*" (Italics ours.)

Appellees quote from Harper and James, Law of Torts (1956), pages 814-815 and 819. It is difficult to clearly define precisely what principle these authors

hoped to convey by what they said. They cite little, if any authorities, and seem to urge their own ideas as to the subject rather than their conclusions drawn from what the courts have said about the matter. However, at page 817, they do seem to align themselves with the inclination of other writers, including the author we have previously quoted from, for they there say:

" '. . . to make out a case of intrinsically dangerous operation upon which absolute liability may be predicated, *it is essential that it appear that the dynamite was discharged under such circumstances that it, in fact, necessarily or obviously exposed the person or property of another to the danger of probable injury.*' This limitation seems proper. It may be that the requirement that the activity must 'necessarily or obviously' create the risk is misleading, but when taken together with the words 'probable danger' it seems to lay down the approximation of the 'area of foreseeable danger' principle. To hold a defendant liable for damage to property located at such a distance that the 'eye of reasonable vigilance' could detect no conceivable danger thereto extends liability beyond the policy of the law as it has developed in this field. *No liability is literally 'absolute.' Liability is imposed because of risks created and risk implies some foreseeable danger. . . .*" (Our emphasis.)

Other authorities are referred to, cited and discussed by the parties but it would unduly lengthen this opinion, without any consonant benefit, to treat them in detail. We are inclined to the position that the complaint here considered fails to state such facts and circumstances as to charge the appellant with an unreasonable use of its property (explosives) under such conditions and in such manner that appellant should have reasonably anticipated or foreseen that appellees' property was subject to probable danger or damage as the proximate result of the detonation of

the explosives by appellant. Such conclusion seems responsive to the holding in the *Button* v. *Railroad Co.* case, *supra,* and does not seem contra to or inconsistent with the expressions of the authorities counted upon by appellees.

In view of the conclusion we have reached, the remaining assignments of error by appellant command no attention.

The judgment herein appealed from is reversed, with instructions to sustain appellant's demurrer to appellees' complaint, preserving to the latter the right to amend or plead over, and for further proceedings.

Bierly, P. J., and Smith, J., concur; Gonas, J., concurs in result.

NOTE.—Reported in 163 N. E. 2d 627.