ENOS COAL MINING COMPANY *v.* SCHUCHART ET AL.

[No. 30,382. Filed March 12, 1963. Rehearing denied
April 29, 1963.]

*Carl M. Gary, Edward L. Waddle* and *Gray & Waddle,* of Petersburg, for appellant.

*Joseph B. Minor,* of Evansville, for appellee.

ARTERBURN, J.—This case comes to us on petition to transfer from the Appellate Court under Burns' §4-215, 1946 Replacement. See 180 N. E. 2d 129 for opinion of Apellate Court.

This is an action brought by the appellees, owners of a home in the small town of Spurgeon, Pike County, Indiana. They allege that their home was damaged by reason of vibrations caused by explosives set off by the appellant in strip coal mining operations on property in the vicinity of appellees' home. The strip mining operation and blasting occurred near the corporate limits of the town of Spurgeon, where 150 homes are located, including that of the appellees. The testimony as to the distance from appellees' home to the place of the blasting varied from 1/4 to 2 miles.

Appellees claimed damages in the amount of $3500 and recovered a verdict in the amount of $895, upon which the trial court rendered judgment.

The appellant alleges error as a result of the overruling of its motion for a new trial, which stated that the verdict of the jury was not sustained by sufficient evidence, was contrary to law, and also specified that the court erred in giving and refusing to give certain instructions. These alleged errors may be considered together.

The legal issue here may be simply stated. At common law, absolute liability exists when there is a physical invasion (a trespass) of another's property, as by falling debris from an explosion. Does the common law principle of liability as in trespass apply also in a case where damage is caused only by vibration, without a physical invasion of the real estate of the appellees?

The practical application of the question may be presented by a hypothetical situation in which rock and debris from an explosion are thrown upon neighboring property, striking a window and breaking a pane therein, and a case where no debris or rock are thrown upon the neighboring premises, but merely the vibration from the violence of the same explosion breaks the window pane. The appellees contend there should be no difference in the principle of law that is applicable because the explosion is the same, which results in the same damage in each instance.

The appellant contends that historically there is a difference. In one case there is a physical invasion and a common-law trespass, resulting in an absolute liability for damages, while in the case of damage from vibration only there is no liability unless negligence is proved to have proximately caused the resulting injury.

In our opinion, neither logic nor reason supports a difference in the liability fixed by law in either of the illustrated situations. In these days of nuclear explosions, the breaking of sound barriers by airplanes and missiles, violent explosions from artillery and gunnery practice (to mention but a few of the advances of science), nearby buildings and property can be shattered or destroyed as effectively as by an earth quake without any physical invasion of the property.

The United States Supreme Court has recognized these modern problems in holding that property owners are entitled to compensation for deterioration in property values caused by noise and vibration of jet planes in the use of air space near an airport. *Griggs* v. *Allegheny County* (1962), 369 U. S. 84, 82 S. Ct. 531, 7 L. Ed. 2d 585.

It is argued that the owner of property may make the fullest use of his property so long as he does not trespass upon other property or damage it by his negligent acts. On the other hand, there is also the principle that one may not use his property so as to injure the property of another. This conflict in the general principles of law is the result of the historical difference between an action in trespass and an action on the case. An examination of this historical development affords no logical reason for the original difference.

In *Exner et ux.* v. *Sherman Power Const. Co.* (2d Cir. 1931), 54 F. 2d 510, 80 A. L. R. 686, Judge Augustus Hand stated at p. 514:

> "Yet in every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people. In each case, a force is applied by means of an element likely to do serious damage if it explodes. The distinction is based on historical differences between the actions of trespass and case and, in our opinion, is without logical basis." [Cases cited] For similar statements see: *Britton* v. *Harrison Const. Co.* (S. D. W. Va. 1948), 87 F. Supp. 405; *Brown* v. *L. S. Lunder Construction Co.* (1942), 240 Wis. 122, 2 N. W. 2d 859.

In *Wendt* v. *Yant Construction Co.* (1933), 125 Neb. 277, 249 N. W. 599, the court, after stating that the imposition of absolute liability for one's acts without regard to fault is in accord with the general principle of law that if damage is inflicted there ordinarily is liability in the absence of an excuse, noted that:

> "The weight of authority sustains the position that there is no distinction in liability for damage to property from blasting which projects rocks or by concussion."

It is also urged that in business and industry certain operations are "necessary" for the encouragement of industrial development and that even though such business activities cause some injury to neighboring properties, a "reasonable use" is permissible. From our viewpoint, this is to say that "a little damage" is "reasonable" and legal, but too much damage is "unreasonable" and wrong. What is or is not "reasonable" is an uncertain yardstick. Although it is a standard of conduct in some cases because of the lack of a better one, it is to be avoided, so far as possible, because of its vagueness and lack of certainty.

A business should bear its own costs, burdens, and expenses of operation, and these should be distributed by means of the price of the resulting product and not shifted, particularly, to small neighboring property owners for them to bear alone. We can understand no sensible or reasonable principle of law for shifting such expense or loss to persons who are not involved in such business ventures for profit. Industrial development is to be encouraged, not at the expense of private individuals without their consent, but by the price of the resulting product in the industry itself. If there is a public interest in such development, the only equitable and just way to distribute such expense or cost would be through the equitable use of public funds.

"Blasting operations are dangerous and must pay their own way." 2 Harper and James, Torts §14.6, p. 814 (1956).

"The individual citizen may be deprived of his home or other property by the proper exercise of the power of eminent domain; but it ought not to be said that it can be lawfully destroyed without compensation in the interest of a mere business enterprise, simply because such enterprise is of great magnitude and general public

interest." *Watson* v. *Mississippi R. P. Co.* (1916), 174 Iowa 23, 34, 156 N. W. 188.

It is also contended that the blasting and mining operations were conducted at all times under the usually accepted and approved methods for strip mining or, in other words, that no negligence proximately contributed to the damage. The evidence shows that the appellees testified that they were in their home on a number of occasions when they heard and felt an explosion and saw plaster drop from the ceiling; that they felt the house tremor on several occasions at the time of the explosions; that they, shortly after the blasting, noticed cracks in the plaster as well as in concrete blocks in the home's foundation. Two other lay witnesses called by the appellees gave testimony, over the objections of appellant, that they were in appellees' dwelling some time after April, 1957, and observed several cracks in the plaster on the walls and ceilings. The two lay witnesses also testified to occasions when plaster was cracked and broken in their own homes, which are located in the same area.

Appellant says that there "is not a scintilla of evidence that the appellant was guilty of any negligence in its blasting operations . . . or as to the way or manner of blasting, or as to the amount of explosives used in blasting." This the appellees do not deny. They say, however, that from a realistic point of view the contrary facts would be practically impossible to prove, since all the information data and records with reference to the size of the charge, the location of the shooting holes, etc. is within the knowledge and control of the appellant. Furthermore, they claim that they have no assurance that such records are correct or that they have not been changed. Appellees further state that

"the burden should be placed" upon the appellant to free itself from blame in cases where damage has occurred. As the complaint in this case does not allege negligence, its theory is not founded upon negligence. Hence the theory of the action here cannot be based upon *res ipsa loquitur,* which raises an inference of negligence and puts a burden upon the defendant where such information is within the exclusive control of the defendant. We do not have an issue of *res ipsa loquitur* in this case. *New York, Chi., etc. R. R. Co.* v. *Henderson* (1957), 237 Ind. 456, 146 N. E. 2d 531.

We therefore return to a consideration of the evidence which shows from expert testimony, uncontradicted in this case, that the blasting was done under expertly approved methods. This situation was considered in *Exner et ux.* v. *Sherman Power Const. Co., supra.* In that case, dynamite was stored and used only for purposes of construction, which was admitted to be "necessary" and reasonable. The court first found that the defendant-construction company was not violating any statute with reference to the storage or use of dynamite. The court, however, stated at p. 513:

> "For the reasons already given in discussing the Vermont statute, we assume that the storage of dynamite in the case at bar was not an act of which the plaintiffs could complain. There was uncontradicted proof that the place of storage and the quantities stored were approved by the deputy fire marshal of the state. While such approval would be no protection against claims of persons inhabiting dwellings within the prescribed zone, the plaintiffs were not of that class and could not have enjoined the storage. The liability of the defendant is not founded on illegal storage or on negligence, which was not proved, but upon the ground that the use of dynamite is so dangerous that it ought to be at the owners' risk." *Bradford Glycerine Co.* v.

*Manufacturing Co.* (1899), 60 Ohio St. 560, 54 N. E. 528, 45 L. R. A. 658.

An excellent review of the law on the principle of liability involved here is to be found in the recent case of *Wallace* v. *A. H. Guion & Co.* (1960), 237 S. Car. 349, 117 S. E. 2d 359, where it is stated:

> "This majority rule of liability without allegation and proof of negligence has been adopted by the American Law Institute, Restatement of Torts, Vol. III, sec. 519, in which is said in sec. 520, at page 44, 'Blasting is ultrahazardous because high explosives are used and it is impossible to predict with certainty the extent or severity of its consequences.' We think that is the better reasoned rule and, supported as it is by the majority of the courts, we follow it.
> "[A]s a general rule, although there is some authority to the contrary, one lawfully engaged in blasting is liable, irrespective of negligence, for personal injuries or property damage sustained either as a result of casting material on adjoining land or as the result of concussion." 35 C. J. S., Explosives, §8a, p. 275.

It seems to us that the majority as well as the better reasoned rule is with the appellees in this case, namely, that there is in fact a trespass under the law, whether it be caused by falling debris or by a vibration or concussion as a result of an explosion on nearby land.

Appellant states in its brief that the issue here does not appear "to have been squarely decided on its merits in Indiana. . . ." Involved here, in the arguments of the parties, is the Appellate Court case of *Boonville Collieries* v. *Reynolds* (1960), 130 Ind. App. 331, 163 N. E. 2d 627. No petition to transfer the case to this court was filed.

In the light of the better reasoned rule and the principles previously discussed, the Boonville ▮ Collieries case is accordingly overruled in so far as it conflicts herewith.

Taking up at this point the more detailed issues presented by the motion for a new trial, we find the trial court did not err in giving appellees' tendered instructions 4, 7, and 9, to which the appellant duly objected. These instructions were concerned, in substance, with the principle of law which we have just reviewed. We need only set forth plaintiff's instruction number 4, which is as follows:

> "You are instructed that if the plaintiffs establish by a preponderance of the evidence that they are the owners of the building and that the defendant corporation engaged in blasting or the use of explosives as alleged and that the plaintiffs' building was damaged as a proximate result of the blasting or the use of explosives as alleged, then and in that event, the plaintiffs are entitled to recover from the defendant for the damages sustained, and your verdict should be for the plaintiffs."

At the same time, the appellant claims the court erred in refusing to give its tendered instructions 14, 15, 16, and 17. These were substantially the same and were based upon the counter proposition of law: that negligence or an unlawful act must be proved before appellees can recover. We need not review again our reasoning as to the proposition of law applicable in this case; therefore, for the reasons previously stated, the trial court did not err in giving appellees' tendered instructions while refusing to give appellant's tendered instructions.

The appellant further complains of the giving of appellees' instruction number 2, which told the jury

that testimony of expert witnesses had been given in the case and further stated:

> "[T]he ultimate weight which is to be given to the testimony of expert witnesses is a question to be determined by the jury, and there is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness. ... [It] is to be received by you and given such weight as you think it is properly entitled to. ..."

We see no error in this instruction. The appellant complains that no witness should be singled out for comment by the court. Without deciding whether a particular witness may be singled out and his testimony commented upon by the court, the court certainly has a right to instruct the jury with reference to the place expert testimony has in a case as well as the rules as to the weight and credibility to be attached to such testimony. 28 I. L. E., Trial §208, p. 207; 53 Am. Jur., Trial, §596, pp. 471-72; *Cleveland, etc., R. Co.* v. *Simpson* (1914), 182 Ind. 693, 104 N. E. 301; *Nordyke & Marmon Co.* v. *Whitehead* (1914), 183 Ind. 7, 106 N. E. 867.

The court did not single out and disparage the testimony of a particular witness, and, therefore, did not usurp the function of the jury by commenting upon the place a certain class of witnesses should have in the jurors' consideration of the testimony as to credibility and weight.

The appellant objected to the testimony of two lay witnesses, Mason and Corn, as to their observations of what occurred at the time of or immediately following the blasting at appellant's mine. We find the trial court did not err in permitting the lay witnesses Mason and Corn to testify with reference to explosions that occurred while they were

in their own homes in the same small town and area in which the appellees lived. The evidence was certainly admissible, if upon no other ground than to show that the proximate cause of the damage to appellees' home was a vibration and explosion, which we judicially know will cover a fairly large area and cannot be easily isolated to one particular spot within the area. Proximate cause cannot always be proved with absolute certainty and exactitude. Even the simple proof that one has died from a gunshot wound, where a lay witness sees the gun fired and the victim fall, must still be based upon the conclusion that a bullet traveled from the gun to the victim, although it could not be seen by such lay witness. A ballistic expert would not be the only witness competent to testify in such case. The same is true with reference to an explosion where the concussion travels through the ground and the resulting damage is seen to take place at the same time. 1 Crumpacker, Indiana Evidence, §1028, p. 248.

The witnesses may tell what they saw, heard, or felt through their senses. It is up to the jury to determine the weight to be given such evidence. Although expert testimony may be relevant and in most cases helpful, the proof of proximate cause cannot be left in this instance solely to expert testimony. 1 Crumpacker, Indiana Evidence, §1028, p. 248; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944; *Pittsburgh, etc. R. Co.* v. *Edwards, Admx.* (1921), 190 Ind. 57, 129 N. E. 310; *The City of Goshen* v. *England* (1889), 119 Ind. 368, 21 N. E. 977; *Indianapolis Traction, etc., Co.* v. *Taylor* (1914), 55 Ind. App. 309, 103 N. E. 812.

The appellant objected to the following questions addressed to the appellees on direct examination:

"Question: Can you describe the damage, what kind of cracks they were and just where they were in the house, and one thing and another as a result of this blasting?"

The objection, rather long in substance, reveals two complaints: (1) that the plaintiff should be required to select one specific date and be limited to proof of that date alone, and (2) that the question assumed that the alleged damage resulted from blasting. Practically the same objection was also made to this question:

"When would you notice this damage after you heard the explosion and felt the damage to your house?"

The answer to the first question was:

"Well, the damage was in practically every room in the house."

The answer to the second question was:

"Well, as I said a while ago, you might not notice anything at the immediate time unless they [sic] would be a particle or piece of plaster drop right at the time, you wouldn't notice it at that time maybe, it might be a day or two and then you would notice some new development from it."

We find no merit in appellant's objections to the questions. The answers to us appear to state facts which were relevant and from which the jury might determine the cause of the damage. We believe that evidence within a reasonable period of time around the date (April 28, 1957) of the alleged damage is material and relevant on the issue of proximate cause. In this context, we note that appellant presented evidence that blasting had occurred on April 22, to and including April 30, with

the exception of a Sunday. Where there is evidence of a series of explosions on or about the same time from the identical source in the same area, resulting in similar characteristics of injury or damage, it can hardly be contended that such evidence is not relevant or pertinent to the issue of proximate cause. 12 I. L. E., Evidence, §55, p. 493; *Ramsey et al.* v. *The Rushville and Milroy Gravel Road Company* (1882), 81 Ind. 394; *Baber* v. *Richart et al.* (1876), 52 Ind. 594; *Indiana, etc., Gas Co.* v. *Anthony* (1900), 26 Ind. App. 307, 58 N. E. 868; *Paine* v. *Com. of State Land Office* (1887), 66 Mich. 245, 33 N. W. 491; *Kerr* v. *Blair* (1907), 47 Tex. Civ. App. 406, 105 S. W. 548.

Finally, although there is a question raised concerning a discrepancy between the complaint and the evidence as to the exact time when the damage occurred, we may assume that the complaint was amended to conform with the evidence on appeal. Burns' §2-1063, 1946 Repl.; *Masuth* v. *State* (1952), 231 Ind. 265, 108 N. E. 2d 313; *Kohli et al.* v. *Hall et al.* (1895), 141 Ind. 411, 40 N. E. 1060; *Praigg et al.* v. *The Western Paving and Supply Co.* (1896), 143 Ind. 358, 42 N. E. 750.

We find no error which would be a ground for reversal.

The judgment of the trial court is affirmed.

Jackson, C. J., and Landis, J., concur.

Achor, J., concurs in result.

Myers, J., not participating.

NOTE.—Reported in 188 N. E. 2d 406.