Frank Ciuferi and Mary Ciuferi et al., Appellants, v. Bullock Mining Company and B. F. Reese, Appellees.

Term No. 47F21.

2

Opinion filed May 29, 1947. Rehearing denied July 7, 1947. Released for publication July 8, 1947.

PHILIP G. LISTEMAN and LLOYD MIDDLETON, both of East St. Louis, for appellants.

FORTH & FORTH, of Granite City, for certain appellee.

BURROUGHS, BURROUGHS & BLEISCH, of Edwardsville, for certain other appellee.

MR. JUSTICE SMITH delivered the opinion of the court.
This appeal is taken by Frank Ciuferi and Mary Ciuferi, John B. Giacoletto, Joseph Ashmann and Catherine Ashmann, Matilda Dolzedelli, Barney Bossetto and Minnie Bossetto and Joseph Giacoletto and Irene Giacoletto, plaintiffs appellants, hereinafter referred to as the plaintiffs, from judgments entered by the trial court in favor of Bullock Mining Company and B. F. Reese, defendants appellees, hereinafter referred to as the defendants, in bar of action and in the alternative granting a new trial.

The suit was brought by plaintiffs for separate damages from subsidence as a result of the coal mining operations of the defendants to six dwellings owned by the plaintiffs. The cause was heard by a jury and verdicts were returned against both defendants awarding damages to the various plaintiffs in amounts from $1,400 to $5,200. It is noted that the verdict awarded Frank Ciuferi and Mary Ciuferi was in the amount of $3,600, but the *ad damnum* clause of the complaint asks for damages in the amount of $3,000. The defendants filed motions for directed verdicts at the close of plaintiffs' evidence which were refused and again at the close of all the evidence upon which ruling was reserved. Following the return of the verdicts the defendants filed motions for judgments notwithstanding the verdicts and in the alternative for a new trial which were allowed by the trial court.

The evidence shows that the plaintiffs were the owners of small tracts of land situated in the northwest

corner of Collinsville, Illinois, which were improved with modern dwelling houses and occupied as homes by them. The instruments by which they acquired title conveyed to them all interest in the real estate except the coal underlying the surface. The damages to their property and the location of their homes on the surface above the mining operations of the defendants was established by the evidence.

In 1918 the defendant, Bullock Mining Company, was incorporated under the laws of this State to conduct a coal mine. Defendant B. F. Reese was the owner of 187½ shares of the 500 shares issued by the corporation and was one of the incorporators and the president of the corporation. The coal underlying the property of the plaintiff John B. Giacoletto, known as the "Brown Tract," was purchased by the defendant B. F. Reese in 1921, for a consideration stated in the deed of $6,480, and the coal underlying the property of the plaintiffs, other than John B. Giacoletto, known as the "Eigenbrodt Tract," was purchased by Reese in 1930. There was a nominal consideration stated in this deed but the resolution of the grantor corporation attached to deed shows the consideration to have been $500. However, Reese testified that the consideration was $1,900. Immediately following the purchase of each of these tracts by Reese, the Bullock Mining Company commenced mining operation upon them but no appreciable portion of coal under the "Eigenbrodt Tract" had been mined by July 1938, but the coal under the "Brown Tract" had been mined and the natural support under the property of John B. Giacoletto had been honeycombed.

The evidence further shows that on July 19, 1938, Bullock Mining Company entered into a lease with a group of coal miners whereby the entire mining equipment, the shaft of the mine and the right to mine unmined coal was leased for a period of three years and the lease specifically stated that the coal to be mined

by the lessee was leased by the Bullock Mining Company from B. F. Reese and James Blythe. The lease further provided that the mining operations should be conducted in a safe manner so that no injury to the surface would occur and that the defendant Bullock Mining Company reserved the right to appoint an inspector to inspect the property demised and all mining operations at any reasonable time. The lessee agreed to pay Bullock Mining Company a rental for personal property at the rate of 10 cents per ton and an additional 5 cents per ton rental for coal mined, making a total of 15 cents per ton. On July 21, 1938, this lease was assigned to Burnwell Coal Company, a corporation composed of the miners who had been originally named as lessees. Mining operations under this lease and an extension of it progressed under the "Eigenbrodt Tract" until by June 1943, the coal under the properties of plaintiffs other than John B. Giacoletto had been mined.

On June 10, 1943, defendant Reese conveyed the Brown and Eigenbrodt tracts to the Bullock Mining Company. The new lease, which was executed shortly after this conveyance by the Bullock Mining Company to Burnwell Coal Company, did not state that the coal to be mined was that held under a lease from B. F. Reese and James Blythe.

By the fall of 1943 the surface of the land owned by John B. Giacoletto began to crack and sink, then his house twisted on its foundation, the basement floor cracked and the front porch leaned away from the house. The coal under this property was mined by Bullock Mining Company prior to its lease to the group of miners who later operated the mine as the Burnwell Coal Company. There was some evidence that the pillars under this tract had been robbed by the Bullock Mining Company. In the spring of 1944 the surface of the properties owned by the other plaintiffs cracked and sunk, water pipes broke, foun-

dations cracked and other damage occurred. The damage to each of the plaintiffs was established and the cost of the repairs as testified to by a contractor was in line with the verdicts rendered by the jury. There was no evidence offered to contradict the amount of damage suffered by the plaintiffs or the estimated costs of repairs.

There were no instructions offered by the plaintiffs and only one instruction offered by the defendants was refused and it pertained to the statute of limitations and defendants did not seriously question the ruling of the trial court denying this instruction.

The case of the defendants is based almost entirely upon the theory that the Burnwell Coal Company was liable for the damage from subsidence because it mined the coal which caused the subsidence under all of the properties, except the property of John B. Giacoletto and that as to this property the subsidence resulted from the negligence of the Burnwell Coal Company in allowing this portion of the mine to become flooded. The defendant Reese further contended that he had no personal interest in the mining properties and that he bought and held both the Brown and Eigenbrodt tracts as trustee for Bullock Mining Company under an agreement whereby he was to be reimbursed what he paid for the tracts as the coal was mined and as soon as he was paid, he was to convey the tracts to the Bullock Mining Company.

However, the evidence offered by the defendant Reese is not convincing on this point. A written memorandum was introduced which was dated February 18, 1921, and it set out the agreement between Reese and the Bullock Mining Company, but it was not signed by anyone except Reese, nor were the corporate records of the Bullock Mining Company introduced to sustain it. The fact that this agreement referred to the Eigenbrodt tract which was not acquired until 1930, tends to discredit the purported

trust agreement. It is also noted that the first lease to Burnwell Coal Company dated July 16, 1938, and which was extended until July 1943, referred to the lands leased by Bullock Mining Company from B. F. Reese and James Blythe, but the next lease, which followed the conveyance of the Brown and Eigenbrodt tract by Reese to the Bullock Mining Company, made no reference to the lands leased from Reese. The evidence also shows that Reese received royalty payments from the Bullock Mining Company for the period it and Burnwell Coal Company operated the mine of many times the amount which he paid for the Brown and Eigenbrodt tracts. Reese contends that he received no royalties and only salary, of which 25 per cent was applied toward the purchase price of the Brown and Eigenbrodt tracts. The contention of the defendant Reese, that he had no personal interest in these mining properties, is not supported by the evidence.

The defendants have devoted most of their argument to the legal proposition, that as lessors they were not liable for subsidence damages suffered by the surface owners, which were caused by the negligent mining operations of the lessee, Burnwell Coal Company. In considering this contention it is necessary to examine the evidence to determine the amount of control and supervision exercised by the lessors to see whether or not the Burnwell Coal Company was a lessee in the usual sense or merely the vehicle of the defendants for the operation of the mine.

It is noted that all of the leases from the Bullock Mining Company to the Burnwell Coal Company provided that the lessor reserved the right to appoint a competent inspector, who was to be allowed to inspect all property and all mining operations. The lessee did not merely lease the coal under the surface but the mine shaft, all buildings and machinery connected with the mining operations of the lessor and the lessee

was required to remove a minimum of 20,000 tons of coal each year. Provision was also made in the lease requiring the lessee to carry workmen's compensation insurance upon its employees. Evidence was introduced, which was denied by the defendants, showing that one inspection had been made of the mine during the term of the lease by John Reese, a brother of the defendant Reese. The evidence also showed that when the Burnwell Coal Company had difficulty in disposing of the screenings from the mine, its agents appealed to Reese and he assisted them in finding purchasers. It was shown that Burnwell Coal Company had difficulty in meeting the 15 cents per ton royalty, after the first two years of operation, and its representatives contacted Reese and he conceded them a reduction of 5 cents per ton on royalties. There was no showing that Reese had authority to so act for the Bullock Mining Company and it is apparent from this and other acts of Reese that he acted individually on many matters with the lessee. It is noted also that the mine map required by sec. 7, ch. 93, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 82.007], which expressly provides the operator of the mine must prepare and file such maps, was prepared and filed by the Bullock Mining Company covering operations from 1938 to 1943.

As to the damage from subsidence to the property of John B. Giacoletto, the evidence showed that Bullock Mining Company had mined the coal under his property and there was evidence that one of the pillars under his property had been robbed. The evidence of the defendants, which attempted to show that the subsidence resulted from negligence of the Burnwell Coal Company in permitting this portion of the mine to become flooded, was not convincing and was not sufficient to warrant the trial court to enter judgment notwithstanding the verdict. The sole question raised by a motion for judgment notwithstanding

the verdict is whether the motion for a directed verdict should have been allowed (*Oliver v. Kelley,* 300 Ill. App. 487, 490), and the test in the latter case is, whether the proof made by the plaintiff, with all legitimate inferences that may reasonably be drawn from it, tends to support the plaintiff's contention, and if it does the motion must be denied. We are of the opinion that the trial court erred in entering judgment notwithstanding the verdict as to the John B. Giacoletto tract. This was a question of fact for the jury to decide and the evidence was sufficient to sustain the verdict.

As to the tracts owned by the other plaintiffs, under which the mining operations were conducted solely by the Burnwell Coal Company, the defendants contend that the Bullock Mining Company was merely the lessor and not liable for damages to them. The rule is stated to be that the lessee of a mine, and not the lessor, is liable for subsidence of the surface caused by the mining operations over which the lessee has full control, citing 36 Am. Jur., p. 185, 40 Corp. Jur., p. 1197, and 18 Ruling Case Law, p. 1247. There is no Illinois case cited which is directly in point on the facts involved in the instant case.

However, the law is well established by numerous decisions of our courts, that the owner of the mineral estate has an absolute duty to support the surface and it does not depend upon the degree of care used by the owner of the minerals in carrying out his mining operations. (*Wilms v. Jess,* 94 Ill. 464; *Jent v. Old Ben Coal Corp.,* 222 Ill. App. 380; *Lloyd v. Catlin Coal Co.,* 210 Ill. 460, 468.)

The defendants cite *Kestler v. Thompson,* 158 Pa. 139, 141, in which the following charge given by the trial judge was held proper, namely: ''Where one has title to a coal vein or to a coal mine and leased it, in general terms to another, and he operates it, that is the lessee operates it, with full control over the mine

as to manner of operating, and the lessee withdraws the support or fails to leave sufficient support, the lessee is liable and not the owner of the coal mine who in that instance would be the lessor.'' It is noted that the language used in this case refers to the lease as being in general terms, with the lessee having full control over the mine as to the manner of operating. The lease to Burnwell Coal Company was neither in general terms, nor did the lessee have full control as to the manner of operating. In the instant case there was not merely a lease of coal rights but the lease carried with it buildings, machinery, mine shaft and all things necessary for mining operations. There were definite requirements to be performed by the lessee as above set out. Under such a lease the lessee could not be said to have full control of the mining operations.

The defendants also rely upon the opinion in *Greek Catholic Congregation of Olyphant Borough v. Plummer,* 338 Pa. 373, 127 A. L. R. 1008, where the court at p. 1011 said, ''It is the settled law in this Commonwealth that the Lessor of a coal mine is not responsible in trespass for the negligent mining by his lessee which results in damage to the surface. In *Hill v. Padree,* 143 Pa. 98, this court held that in such a case the disturbance of a right of the surface support is a tort for which the party which did the mining and not the Lessor was responsible. In *Offerman v. Starr,* 2 Pa. 394, this court said in an opinion by Chief Justice GIBSON: 'Respondeat superior is inapplicable to an owner of land for acts of negligence in a business not conducted by him and for his account . . . so far the defendants had nothing to do with the business, but to receive their rent. But they reserved a right to visit and examine the manner in which the business should be carried on in the mine; and to resume the possession should the tenant refuse to furnish statements of the amount taken out, or pay the rent. These

clauses do not constitute a reservation of the possession or a right to interfere with the direction of the business. The right to visit was to enable them to see whether the tenant was performing his engagements, in order to found process against him if he were breaking them; and the right to resume the possession was to put an end to the business altogether. The lease was analogous in all respects to the lease of a farm with a clause of re-entry for bad farming, or non-payment of rent. On no principle, then, could the acts of Lewis be imputed to his lessors.' ''

It is noted in the Pennsylvania cases cited that liability for subsidence is predicated upon negligent mining. The rule of absolute liability for failure to furnish surface support is not applied and the person extracting the minerals can absolve himself from liability by showing that the mining operations were expertly done without negligence. This rule has not been followed by our courts. (*Lloyd v. Catlin Coal Co., supra.*) To allow the owner of coal rights to avoid his liability for support of the surface under the facts as shown in this case, by permitting him to reap the benefits of his coal rights through an irresponsible lessee, would work untold hardship upon the surface owners.

This principle is supported in the case of *Starr v. Stanard-Tilton Milling Co.*, 183 Ill. App. 454, in which plaintiff claimed that his subadjacent support was destroyed by the erection of a building by the defendant upon the defendant's property. The defendant contended he was not liable because the building was constructed by an independent contractor. In overruling that contention the court at p. 461 said: ''In this case there was the application under the law of an adjoining landowner to erect his building so as not to negligently destroy the walls of appellee's building, and we do not understand that where the law imposes

upon one an obligation that he can escape liability for performance of that duty by securing it to be performed by an independent contractor. If the injury results directly from the acts called for or rendered necessary by the contract and not acts which are merely collateral to the contract, the employer is as liable as if he had himself performed such acts.''

■■ It is clear from an analysis of the evidence that the lease by the Bullock Mining Company to Burnwell Coal Company was not merely a lease of coal rights but it was an arrangement for continuing the operation of a coal mine. The Burnwell Coal Company served as a means for the collection of royalties by Reese, through the Bullock Mining Company, on coal rights, the title to which remained in Reese practically the entire period of the term of the lease The evidence submitted in regard to the plaintiffs, other than the plaintiff John B. Giacoletto, considered in its most favorable light, was sufficient for the jury to find that the defendants used the Burnwell Coal Company to further their mining operations.

The jury found the issues in favor of the plaintiffs and in entering judgment notwithstanding the verdicts the trial judge should have considered whether the proof made by them, with all legitimate inferences that may reasonably be drawn from it, tends to support the plaintiffs' contention. The sole question raised by a motion for judgment notwithstanding the verdict is whether the motion for a directed verdict should be allowed, as stated above in considering the case of the plaintiff John B. Giacoletto. The rule for passing on a motion to direct a verdict is stated in the case of *Blumb v. Getz,* 366 Ill. 273, at p. 274, as follows: ''A motion to direct a verdict is in the nature of a demurrer to the evidence. The rule is, that in considering such a motion the trial court should consider the evidence produced on the part of the plaintiff most strongly in plaintiff's favor and give to it every rea-

sonable intendment favorable to plaintiff. The court should not weigh the evidence with the same particularity as it would upon a consideration of all the evidence on a motion for a new trial.'' It was the province of the jury to determine the liability of the defendants and whether or not the evidence offered by the defendants destroyed or overcame the prima facie case of subsidence made by the plaintiffs' evidence. The trial court was not warranted under the evidence in deciding this question as a matter of law as to the plaintiffs whose property was damaged by subsidence as the result of the mining operations performed by the Burnwell Coal Company.

The defendants' contention that a recovery against them cannot be sustained in counts 1, 3, 4, 5 and 6, for the reason that each count charges that the coal under the plaintiffs' premises was owned and mined by the defendants, while the proof shows that the mining under all of these plaintiffs' properties was done by the Burnwell Coal Company, is without merit. The complaint alleged that the coal underlying the plaintiffs' properties was owned by defendants and that they mined or caused to be mined and they are now mining or causing to be mined all of said coal. The proof shows that Reese owned the coal and that he caused it to be mined by leasing it to Bullock Mining Company and it, with the consent of Reese, leased it to Burnwell Coal Company. An allegation charging a defendant with doing an act complained of can be proved by showing that the act was done by his agent or servant or someone acting for him. (*Rich v. Albrecht,* 300 Ill. App. 493, 496.)

We are of the opinion that the trial court was in error in entering its ruling giving judgment for the defendants notwithstanding the verdicts, and in ordering a new trial, and said orders are hereby reversed.

It is ordered that the judgments in bar of plaintiffs appellants' actions and the order of the trial court

granting defendants appellees a new trial be and the same are reversed, and that plaintiffs appellants have and recover from defendants' appellees the costs by them expended in this behalf, and have execution therefor. This cause is remanded to the circuit court of Madison county with directions to vacate and set aside the judgments in bar of plaintiffs' actions against defendants, and to overrule and deny the motions for judgment notwithstanding the verdicts and the motions for new trial, and to proceed in due course.

*Reversed.*

BARTLEY, P. J., and CULBERTSON, J., concur.