William F. HASEMAN, Appellant (Defendant below),

v.

Paul E. ORMAN, Patricia Orman, Keith Jones, Paula Jones and James G. Orman, Appellees (Plaintiffs below).

No. 11S01–9611–CV–699.

Supreme Court of Indiana.

May 28, 1997.

Don M. Robertson, Margaret M. Frisbie, Bloomington, for Appellant.

Max E. Goodwin, Terre Haute, for Appellees.

### ON PETITION TO TRANSFER

BOEHM, Justice.

■ This case deals with the liability of an owner of subsurface mineral rights for damage to the surface caused by a lessee of the rights. The trial court held that defendant William F. Haseman was absolutely liable to the plaintiffs for subsidence damage caused by his lessee, Coal, Inc. The Court of Appeals, with one judge dissenting, reversed on the ground that Haseman was not strictly liable as a matter of law and had not assumed a duty to the surface owners. *Haseman v. Orman*, 660 N.E.2d 1041 (Ind.Ct. App.1996). We hold today that a lessor of subsurface mineral rights is strictly liable for subsidence damage caused by a lessee of the rights.

## Factual and Procedural History

The facts most favorable to the judgment show that the plaintiffs [1] owned three homes above a seam of coal in Greene County. Defendant Haseman owned the mineral rights to the seam and leased his entire interest through a series of leases to Fuel, Inc., a leasing corporation for Coal, Inc., a mining company.[2] In 1985, Coal, Inc. began extracting coal from underneath the plaintiffs' land. Haseman played no role in the mining itself, but occasionally visited the mine and received royalties on a per-ton basis pursuant to the terms of the leases. In 1987 or 1988, the plaintiffs began experiencing subsidence damage to their structures and real estate. On June 6, 1990, the plaintiffs sued Haseman and Coal, Inc. in Greene County Circuit Court, alleging violation of their right to "subjacent support." Venue was changed to Clay County and the trial court, in a bench trial, found that Haseman and Coal, Inc. were both absolutely liable to the plaintiffs for subsidence damage. The plaintiffs were awarded compensatory damages totaling $40,610.[3] Haseman appealed but Coal, Inc. did not. The plaintiffs assert that Coal, Inc. is insolvent, but we are not directed to any record support on this point. We assume that the parties believe this to be true based on the fact that both Haseman and the plaintiffs extend the effort to pursue this appeal rather than to claim against Coal, Inc. We granted transfer and now affirm.

1. The plaintiffs and appellees here are Paul E. Orman, Patricia Orman, Keith Jones, Paula Jones and James G. Orman. We refer to them collectively as "the plaintiffs" for ease of reference.

2. Haseman co-owned the rights with the Humphreys Trust, not named as a defendant in this lawsuit.

3. Paul and Patricia Orman were awarded $20,835 for structural damage and $2,000 for real estate damage; James Orman was awarded $8,250 for structural damage and $3,000 for real estate damage; and Keith and Paula Jones were awarded $6,525 for both structural and real estate damage, not segregated. The plaintiffs were also awarded $27,325.14 for reasonable attorney fees and expert costs pursuant to the 1994 version of a section of the Surface Coal Mining and Reclamation Act applicable to underground min-

There is no dispute here that Coal, Inc., as the mining operator, is strictly liable [4] to the plaintiffs for their subsidence damage. The parties, however, disagree as to Haseman's liability. Haseman contends that he was a "passive" lessor of mineral rights who had no control over Coal, Inc.'s mining operations. He points to authority that he contends stands for the proposition that only the party actually removing the support may be held strictly liable. The plaintiffs, by contrast, argue that the relevant decisions do not absolve "passive" lessors and in fact create absolute liability for the mineral rights owner, even where a third party leasing the rights has caused the damage. Haseman, the plaintiffs contend, is strictly liable because he authorized Coal, Inc. to do something he could not have done himself—leave their surface land without adequate subjacent support. We review the judgment for clear error as to factual determinations, Ind. Trial Rule 52(A), but we do not defer to the trial court in reviewing questions of law.

### I. Prior Case Law

"Coal mine subsidence is the lowering of strata overlying a coal mine, including the land surface, caused by the extraction of underground coal." *Keystone Bituminous Coal Assoc. v. DeBenedictis*, 480 U.S. 470, 474, 107 S.Ct. 1232, 1236, 94 L.Ed.2d 472, 481 (1987) (construing constitutionality of Pennsylvania mine subsidence regulations). Recovery for subsidence damage has long been

ing. IND CODE § 13–4.1–11–11(i) (1993), *repealed by* 1995 Ind. Acts, P.L. 1, § 91; *see now* IND CODE § 14–34–15–12(e) (Supp.1995). Despite some confusion in the wording of the order awarding attorney and expert fees, the parties agree that this amount was awarded against Coal, Inc. only and not Haseman. Accordingly, this aspect of the judgment is not an issue in this appeal.

4. "Strict liability" generally refers to liability imposed without (1) an intent to interfere or a legal justification for doing so; or (2) breach of any particular duty of care. W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS 534 (5th ed. 1984). Consistent with precedent, *e.g., Hebel v. Conrail, Inc.*, 475 N.E.2d 652 (Ind.1985), we use the terms "strict liability" and "absolute liability" interchangeably and intend no difference between them.

an issue in coal mining states, including Pennsylvania, Kentucky, West Virginia and Indiana. Where title to the land and ownership of subsurface mineral rights are severed, courts in this state have consistently held that the surface landowner enjoys the right to subjacent support of both the land and structures on it.[5] *Paull v. Island Coal Co.*, 44 Ind.App. 218, 222, 88 N.E. 959, 960 (1909). And we determined long ago in *Yandes v. Wright*, 66 Ind. 319 (1879) that liability for subsidence damage does not depend upon a showing of negligence:

> [T]he person owning the minerals is bound at his peril not to cause a subsidence of the surface ... and no degree of care or skill exercised in the mining operations will shield him from liability to the owner of the surface for all damages sustained by reason of the subsidence thereof.

*Id.* at 323–24 (citation and internal quotation marks omitted). *Yandes* also established that this liability may be waived or abrogated by contract.

These cases, however, dealt with a mining operator who was also the owner of the rights. There are no reported Indiana decisions addressing the liability of the mineral rights owner for subsidence caused by a lessee. Both Haseman and the plaintiffs nonetheless point to language in *Paull* and *Jackson Hill Coal & Coke Co. v. Bales*, 183 Ind. 276, 108 N.E. 962 (1915) that they contend supports their position. Neither precedent is helpful. *Paull* was a dispute between a surface landowner and a mining company who both took their title from a common grantor. The company acquired its mineral rights by warranty deed with a specific release from any liability for damage to the surface estate. The landowner subsequently acquired the surface estate, taking it with knowledge of the company's rights. The Appellate Court held that the rights of the parties were controlled by the release in the grant of mineral rights and rejected the landowner's claim for

subsidence damage. *Paull*, 44 Ind.App. at 224, 88 N.E. at 961. Haseman enjoys no similar release from the plaintiffs' predecessor in title. In *Jackson Hill*, the surface owner sued only the mining operator, who had leased the mineral rights from a third party. We held that it was proper to refuse an instruction to the jury that only the owner of the mine, and not the lessee, is liable for withdrawal of subjacent support. In so holding, we merely reaffirmed the unremarkable proposition that "the one who takes out the coal" is strictly liable for subsidence damage. *Jackson Hill*, 183 Ind. at 281, 108 N.E. at 964. In other words, *Jackson Hill* established the proposition, with which all parties to this appeal agree, that Coal, Inc. is liable to the plaintiffs. However, because the minerals owner was not a party, *Jackson Hill* offers no guidance as to Haseman's liability to the plaintiffs in this case.

*Yandes* and *Western Ind. Coal Co. v. Brown*, 36 Ind.App. 44, 74 N.E. 1027 (1905) are similarly uninstructive because, as in *Paull*, there was no lease by the owner of mineral rights to a third party. To the extent language in *Yandes, Paull*, and *Western Ind. Coal* tends to blur the distinction between the mine owner and operator in defining the liability for withdrawal of subjacent support, it is simply because under the facts of those cases, the distinction did not affect the result: the two were one and the same.

A handful of cases from other jurisdictions have addressed the lessor's liability under these circumstances. The decisions have gone both ways. For example, *Ciuferi v. Bullock Mining Co.*, 332 Ill.App. 1, 73 N.E.2d 855, 859 (1947) reasoned that "[t]o allow the owner of coal rights to avoid his liability for support of the surface ... by permitting him to reap the benefits of his coal rights through an irresponsible lessee, would work untold hardship upon the surface owners." Similarly, the Colorado Supreme Court in *Campbell v. Louisville Coal Mining*

---

5. The right to subjacent support applies only to the land in its natural condition. If the subsidence was caused by artificial structures on the land, the subsurface owner incurs no liability. *Jackson Hill Coal & Coke Co. v. Bales*, 183 Ind. 276, 278, 108 N.E. 962, 964 (1915). The burden of pleading this issue rests with the defendant.

*Id.; Western Ind. Coal Co. v. Brown*, 36 Ind.App. 44, 50, 74 N.E. 1027, 1029 (1905). Because Haseman does not contend that the subsidence resulted from anything other than Coal, Inc.'s mining operations, this exception does not apply here.

*Co.*, 39 Colo. 379, 89 P. 767, 768 (1907) held the lessor strictly liable on the ground that "[o]ne cannot knowingly reap the benefits of a wrong, and escape the liabilities resulting from such wrong." Some authorities have struggled to find the rights owner in control of the operator as a basis for liability. Others rely on strict liability. *See Republic Iron & Steel Co. v. Barter*, 218 Ala. 369, 118 So. 749, 751 (1928) (lessor absolutely liable where lessee withdraws subjacent support even if "no control or direction over the work is retained and exercised" by the lessor). And there is authority tending to support Haseman's position. *See Butte Copper & Zinc Co. v. Poague*, 164 F.2d 201 (9th Cir.1947); *School Dist. of Borough of Shenandoah v. City of Philadelphia*, 367 Pa. 180, 79 A.2d 433 (1951). However, we conclude for the reasons explained below that absolute liability better balances the competing interests and better advances the relevant public policy considerations.

## II. Reasons Supporting Strict Liability of the Rights Lessor

■ Since *Jackson Hill* was decided over eighty years ago, strict liability in tort has become widely accepted and widely applied. *Enos Coal Mining Co. v. Schuchart*, 243 Ind. 692, 188 N.E.2d 406 (1963) illustrates some of the general principles that are relevant. There, we held a coal mining company strictly liable for surface damage caused by blasting in the company's mine. The plaintiff's home near the mine had sustained structural damage due to vibrations from the blasting. In imposing strict liability, we reasoned:

A business should bear its own costs, burdens, and expenses of operation, and these should be distributed by means of the price of the resulting product and not

shifted, particularly, to small neighboring property owners for them to bear alone. We can understand no sensible or reasonable principle of law for shifting such expense or loss to persons who are not involved in such business ventures for profit.

*Id.* at 697, 188 N.E.2d at 408. This rationale applies with no less force to Haseman's liability here. *Cf. Mowrer v. Ashland Oil & Refining Co., Inc.*, 518 F.2d 659 (7th Cir. 1975) (applying language quoted above to a claim of private nuisance under Indiana law). At bottom, strict liability places the loss from an activity proven to generate risk of loss on the one who benefits from the activity rather than an innocent party.[6]

■ The balance of equities weighs heavily against Haseman in this case. He reaped substantial royalties from Coal, Inc.'s exercise of his rights. The commercial activity occurred only to the detriment of the plaintiffs. Subsurface mining carries inherent perils for the surface estate.[7] In estimating how much coal may be removed without jeopardizing the stability of the surface and what support is needed, the law of probabilities is the only guide and the law of gravity the only certainty. Although the extent and timing of the subsidence may be subject to a number of factors, "some subsidence occurs over every underground mine[.]" *Keystone Coal Assoc.*, 480 U.S. at 477 n. 8, 107 S.Ct. at 1238 n. 8. It would be fundamentally unfair to allow Haseman to profit from his lessee's activities and then wash his hands of any liability by hiding behind the lease. The surface landowners, at least in this case, had no control over what took place beneath their land. Haseman did. In this sense, no lessor

---

6. Another way of viewing Haseman's liability is that his duty to provide subjacent support is nondelegable. The employer of an independent contractor is generally not liable for the negligence of the contractor, but an exception exists for work that is intrinsically dangerous. *See, e.g., Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 586 (Ind.1995). Because removal of subsurface minerals is known to create risk of injury to the surface, the same rationale applies here.

7. As the U.S. Supreme Court observed in upholding Pennsylvania's regulatory scheme against constitutional attack: "[Mine subsidence] can have devastating effects. It often causes substantial damage to foundations, walls, other structural members, and the integrity of houses and buildings. Subsidence frequently causes sinkholes or troughs in land which make the land difficult or impossible to develop. Its effect on farming has been well documented—many subsided areas cannot be plowed or properly prepared." *Keystone Coal Assoc.*, 480 U.S. at 474–75, 107 S.Ct. at 1236–37 (footnote omitted).

of subsurface mineral rights is "passive."[8] Haseman could have taken steps to ensure that adequate support remained for the plaintiffs' land by imposing standards on Coal, Inc. Perhaps more important, Haseman, and not the plaintiffs, was in a position to require financial responsibility of his lessee—whether in the form of insurance, indemnity or simply by careful selection of the operator.[9] "[T]he defendant's enterprise, while it will be tolerated by the law, must pay its way." W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS 536 (5th ed. 1984). Under this doctrine, the operator is clearly liable for subsidence damage. The balance of equities favors imposing liability on the owner of the rights and transferring to the owner the risk that the operator is unable to fulfill its obligations. Accordingly, we hold that the mineral owner's duty to provide subjacent support cannot be extinguished by a lease of mineral rights unless a separate contract with the surface estate holder so provides.[10]

### Disposition

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

8. Haseman argues that the Second Restatement of Torts would not impose liability on him as a "passive" lessor. The Restatement recognizes a general rule of absolute liability for withdrawal of subjacent support, but elaborates in a comment that "[t]he owner or possessor of [the subsurface estate] is not liable ... unless he was an actor in the withdrawal of support." RESTATEMENT (SECOND) OF TORTS § 820 & cmt. g (1979). Perhaps an "actor in the withdrawal of support" could include a lessor who voluntarily contracts away its mineral rights, benefits from their exercise, and then turns a blind eye as the rights of the surface estate are violated. However, we conclude that no action beyond assignment of the rights to a third party is required to render the mineral rights owner strictly liable as if he were the operator. To the extent the Restatement is inconsistent with this view, it does not reflect the law of the state.

9. Haseman's lease required Coal, Inc. to purchase bodily injury and property damage liability insurance in an amount of not less than one million dollars. However, it is unclear, and the parties do not address, whether Coal, Inc. ever bought insurance and, if so, whether the plaintiffs might have financial recourse under the policy.

10. Haseman and the plaintiffs debate the extent to which the leases (1) enabled Haseman to control or supervise Coal, Inc.'s mining operations; (2) authorized or ratified Coal, Inc.'s activities leading to the subsidence; or (3) show that Haseman acted reasonably or did all he could to protect the plaintiffs' interests. Because we conclude that Haseman's liability arises by virtue of a legal relationship—his ownership of the mineral rights and lease to Coal, Inc.—we need not consider these factors or the specific terms of the leases.