

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-CT-39

## Cave Quarries, Inc.,
*Appellant/Plaintiff,*



FILED

Aug 29 2024, 10:20 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Warex LLC,
*Appellee/Defendant.*

Argued: March 14, 2024 | Decided: August 29, 2024

Appeal from the Orange Circuit Court
No. 59C01-2109-CT-191
The Honorable Steven L. Owen, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CT-1916

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**Molter, Justice.**

Defendant Warex LLC sells controlled explosive and blasting services to break or remove rock and other materials. After Plaintiff Cave Quarries, Inc. hired Warex to blast a quarry rock wall, the plan went awry, and the explosion instead leveled the quarry's asphalt plant. Cave Quarries sued Warex for the damage, and because the parties' oral contract didn't cover this scenario, Cave Quarries turned to tort law, asserting claims for strict liability and negligence.

For well over a century, Indiana's common law has treated blasting as an abnormally dangerous activity subject to strict liability for damage to neighbors and other bystanders. But this case doesn't involve any damage to neighbors or bystanders. The only damage was to Cave Quarries' own asphalt plant located on its own property. So this interlocutory appeal presents a question of first impression in Indiana: Is a blasting company strictly liable for damage it causes to its blasting customer, or is the company instead liable to its customer only for negligence?

# Facts and Procedural History

## I.    Factual Background

Cave Quarries owns and operates two limestone quarries in Indiana. At its Paoli quarry, it also used to own and operate an asphalt plant that created asphalt from materials the company extracted from its quarries. The asphalt plant was about twenty-five feet from one of the quarry's rock walls.

To extract limestone, Cave Quarries uses controlled explosives for "blasting" rocks loose from the quarries' walls. *See* 675 Ind. Admin. Code 26-1-1(3) (defining "blast" as "the controlled detonation of explosives or explosive materials to break or move, or both, rock or other materials"). Until 2015, Cave Quarries employed a licensed, in-house blaster to conduct and supervise all blasting operations at its quarries.

Warex provides controlled explosive and blasting services. Before 2015, Warex only supplied Cave Quarries with explosive materials; it did not perform the blasting operations for Cave Quarries. But when Cave Quarries' in-house blaster retired in 2015, it began hiring Warex as an independent contractor to conduct blasting at its quarries. Warex conducted blasts at both of Cave Quarries' limestone quarries, including one or two blasts per month at the Paoli quarry.

Cave Quarries and Warex did not enter into any written contracts about the blasting operations. When Cave Quarries needed blasting services, it would contact Warex and specify where the blast should be performed and what the blast should do. From there, Warex would prepare the blast location and call in a third-party drilling company to drill a hole for the explosive materials.

One of the risks with blasting is that the blast location may have mud seams, which are deposits of soft material that can cause the explosives to slip out of their intended location. Mud seams were sometimes found at Cave Quarries' Paoli quarry, and the third-party drilling company's drill reports helped identify any mud seams near blasting areas.

In 2018, Cave Quarries decided to "make room" on the quarry floor near the asphalt plant. App. Vol. 3 at 30. This would provide Cave Quarries with additional space, "mostly for production of stone." *Id.* Doing so required more blasting. So in 2018, it began asking Warex to conduct blasting operations along the wall behind the asphalt plant. Cave Quarries knew its asphalt plant was "within the radius of risk" from the blasting along the quarry wall, and in 2021, it placed steel plates along its asphalt plant to protect it from damage. *Id.* at 94. At Cave Quarries' request, Warex performed blasts near the asphalt plant in 2018, 2019, 2020, and 2021.

Generally, a series of smaller blasts is more expensive than one large blast because of certain per-blast costs. Warex had been performing smaller blasts near Cave Quarries' asphalt plant. But at some point, cost concerns led Cave Quarries to question why Warex was opting to perform these smaller blasts. Warex's blaster, Joshua Collins, testified in his deposition that the smaller blasts were indeed more expensive than a

larger blast, but the smaller blasts were also safer. Eventually, Cave Quarries and Warex agreed to perform a larger blast at a designated location near the asphalt plant. Collins and Cave Quarries' superintendent, Randy Key, made the final decision, and the blast was to take place on March 3, 2021.

So on March 3, under Collins' supervision, Warex conducted the larger blast along the quarry wall. The third-party drilling company's report identified no mud seams at the designated blasting site. But unbeknownst to everyone, there was a mud seam, and it caused the explosives to shift and slip out of their intended area. When the blast was initiated, some of the explosives unintentionally detonated in mid-air. The resulting explosion crushed and destroyed Cave Quarries' asphalt plant.

## II. Procedural History

Cave Quarries filed a complaint and alleged that Warex was strictly liable for the damage to the asphalt plant. In the alternative, Cave Quarries alleged that Warex was "negligent in its use of explosives, causing damage to Cave." App. Vol. 2 at 12. Warex responded with an answer denying that strict liability applied here and further denying that it was negligent in conducting the blasting operation.

After the parties conducted discovery, Cave Quarries filed a "Motion for Summary Judgment Against Defendant, Warex LLC, on the Issues of Liability and Causation." *Id.* at 19. Cave Quarries argued that Indiana law applies strict liability to all damages proximately caused by blasting operations; Warex conducted a blasting operation that destroyed Cave Quarries' asphalt plant; and therefore, Warex is strictly liable for the damage to the asphalt plant.

In response, Warex filed its own "Motion for Summary Judgment." *Id.* at 129. It argued that if strict liability does apply, Cave Quarries is barred from recovery because it assumed the risk of damage to its asphalt plant by selecting a blasting area near the plant. In the alternative, Warex argued that "a negligence standard may more appropriately apply to the facts herein." *Id.* Accordingly, Warex requested an order of partial

summary judgment concluding that the case is governed by the negligence standard rather than the strict liability standard.

After the trial court held a hearing on the parties' motions, it issued an "Order Denying [Cave Quarries'] Motion for Summary Judgment and [Warex's] Motion for Summary Judgment." *Id.* at 8. The court held that strict liability should not apply here because Cave Quarries "was not a mere innocent bystander to [Warex's] actions nor the harm that resulted." *Id.* at 10. The court also held that the negligence standard should apply and that material issues of fact precluded summary judgment for either party.

Cave Quarries asked the trial court to certify its summary judgment order for interlocutory appeal under Appellate Rule 14(B). The court granted Cave Quarries' request, and the Court of Appeals accepted jurisdiction. In a unanimous published opinion, the Court of Appeals affirmed the trial court's denial of the parties' motions for summary judgment and remanded the case with instructions to proceed under the negligence standard. *See Cave Quarries, Inc. v. Warex LLC*, 219 N.E.3d 221 (Ind. Ct. App. 2023). We granted transfer to consider this issue of first impression, 230 N.E.3d 885 (Ind. 2024), thereby vacating the Court of Appeals decision, Ind. Appellate Rule 58(A).

# Standard of Review

We review summary judgment decisions de novo, and Trial Rule 56(C) supplies the framework. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party is entitled to summary judgment only if the evidence it designates in support of its motion "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Like a motion for judgment on the evidence, the purpose of summary judgment is to withdraw issues from the jury only when there are no factual issues for the jury to decide. *Cosme v. Clark*, 232 N.E.3d 1141, 1150 (Ind. 2024). "Summary judgment is available when the nonmovant **cannot prove** its claim based on the undisputed evidence," and judgment on the evidence is available "when

the nonmovant **has not** proved its claim because no reasonable jury could find for it." *Id.* (emphases in original).

At both stages, courts must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences for the nonmovant. *Id.* While judges may evaluate whether an inference is reasonable, and mere speculation is insufficient to overcome either motion, judges may not weigh the evidence or judge witness credibility. *Id.* That assignment is reserved for the jury.

# Discussion and Decision

Cave Quarries aptly frames the issue on appeal: "Whether a blasting company, which is wholly responsible for planning and executing blasting activities, is strictly liable to its customers for harm caused by its blasting activities." Appellant's Br. at 7. Cave Quarries argues the answer is yes because Indiana has long treated blasting as an abnormally dangerous activity subject to strict liability. Warex acknowledges that Indiana imposes strict liability for blasting damage to neighbors and bystanders. But it argues the policy rationale for protecting those who are not involved in and not the beneficiaries of the blasting does not support extending strict liability for damage to customers who participate in the blasting by hiring a company to undertake the blasting for the customer's benefit. For damage to blasting customers, Warex argues, the ordinary negligence standards and defenses should apply.

Like the trial court and Court of Appeals, we agree with Warex. Below, we first discuss Indiana's treatment of blasting as an abnormally dangerous activity subject to strict liability for damage to neighbors and bystanders. Then we explain why, like the Court of Appeals, we continue to take that bright-line approach, declining Warex's invitation to instead evaluate the utility and dangerousness of blasting case-by-case through a six-factor balancing test. *Cave Quarries, Inc.*, 219 N.E.3d at 228 n.7. And finally, we explain our holding, which places cases like this one on the other side of that bright line: strict liability does not extend to damage to a

customer who hires the defendant to conduct the blasting, although the blaster remains liable to their customer for negligent conduct.

## I. Indiana law has long treated blasting as an abnormally dangerous activity subject to strict liability for damage to neighbors and bystanders.

Tort law imposes on us all a "duty of reasonable care under the circumstances," and when we act unreasonably under the circumstances, we're negligent. *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 29 (Ind. 1999). Under this negligence standard, an injured party may recover for their damage by proving: (1) the defendant owed them a duty; (2) the defendant breached that duty through conduct that fell below the appropriate level of care; and (3) the defendant's breach caused injury to the plaintiff. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

But some commercial activities are so dangerous that we impose a harsher rule, holding defendants liable for damage they cause even when they *did* act reasonably under the circumstances. *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003). That is, we impose "strict liability," which "assumes no negligence of the actor, but chooses to impose liability anyway." *Id.* One reason for this rule is that while the dangerous activity is valuable enough for the law to tolerate it, the business must still "bear its own costs, burdens, and expenses of operation"—including costs for the damage the business causes. *Enos Coal Mining Co. v. Schuchart*, 188 N.E.2d 406, 408 (Ind. 1963). Those costs can then "be distributed by means of the price of the resulting product" rather than shifting them "to persons who are not involved in such business ventures for profit." *Id.*

For almost 150 years, our appellate courts have treated blasting as one such activity. And they have held defendants are strictly liable when their blasting damages neighbors and bystanders. Our Court held that a quarry was strictly liable when its blasting launched debris that severely injured a plaintiff who was traveling down a nearby road, *Wright v. Compton*, 53

Ind. 337 (1876), and we held a coal mining company was strictly liable when vibrations from its blasting caused structural damage to a nearby home, *Enos Coal Mining Co.*, 188 N.E.2d at 406. Our Court of Appeals held that a construction company was strictly liable when it detonated dynamite close to a gas line, causing an explosion that injured a utility worker repairing the line. *Galbreath v. Eng'g Const. Corp.*, 273 N.E.2d 121, 125 (Ind. Ct. App. 1971). And that court has repeatedly recognized that Indiana treats blasting as an abnormally dangerous activity. *Selby v. N. Ind. Pub. Serv. Co.*, 851 N.E.2d 333, 338 (Ind. Ct. App. 2006) (recognizing "the longstanding categorization of blasting as an abnormally dangerous activity susceptible to strict liability"); *Hedges v. Pub. Serv. Co. of Ind.*, 396 N.E.2d 933, 936 n.4 (Ind. Ct. App. 1979) (recognizing that Indiana has "applied the doctrine of strict liability for ultra-hazardous activities in cases involving blasting operations").

While our courts have taken a bright-line approach to treating blasting as an abnormally dangerous activity, Warex suggests that, going forward, we should adopt a "more flexible approach." Appellee's Br. at 20. Under Warex's proposed framework, judges would balance the risks against the benefits of blasting in the individual circumstances of each case to decide whether strict liability should apply. We consider that proposal next.

## II. We continue to take a bright-line approach rather than evaluating the utility of blasting case-by-case.

We explained in *Enos Coal Mining Company* that imposing strict liability for blasting followed the majority rule as reflected in the American Law Institute's First Restatement of Torts. 188 N.E.2d at 409–10. Section 519 of that Restatement imposes strict liability for "ultrahazardous activity." Restatement (First) of Torts § 519 (Am. Law Inst. 1938). And "[a]n activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage." *Id.* § 520. The Restatement's comments confirm that "[b]lasting is

ultrahazardous because high explosives are used and it is impossible to predict with certainty the extent or severity of its consequences." *Id.* cmt. c.

Similarly, the Third Restatement of Torts—the most recent Restatement—explains that "[a]n actor who carries on an abnormally dangerous activity is subject to strict liability for physical harm resulting from the activity." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 20 (Am. Law Inst. 2010). The "difference in nomenclature" between the First Restatement's reference to "ultrahazardous" activity and the Second Restatement's reference to "abnormally dangerous" activity "is of no importance." *Erbrich Prods. Co. v. Wills*, 509 N.E.2d 850, 853 (Ind. Ct. App. 1987). And an activity is abnormally dangerous under the Third Restatement if: "(1) the activity creates a foreseeable and highly significant risk of physical harm even when reasonable care is exercised by all actors; and (2) the activity is not one of common usage." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 20. Again, the comments confirm that blasting is "a paradigm case for strict liability." *Id.* cmt. e.

Warex argues we should diverge from the more categorical approach reflected in the First and Third Restatements. Instead, Warex says, we should weigh the risks of blasting against its benefits case-by-case through the six-factor balancing test in Section 520 of the Second Restatement. That section provides:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered:
>
> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (Am. Law. Inst. 1977).

Under that test, all the factors must be considered and they "are all of importance," but "[a]ny one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability." *Id.* cmt. f. "On the other hand, it is not necessary that each of them be present, especially if others weigh heavily." *Id.* At bottom, the test seeks to determine whether the activity's "dangers and inappropriateness for the locality [are] so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence." *Id.* A judge rather than the jury makes this evaluation because, as the Restatement explains, "it is no part of the province of the jury to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place or whether such an activity as blasting is to be permitted without liability in the center of a large city." *Id.* cmt. l.

This means, for example, that blasting is not an abnormally dangerous activity and not subject to strict liability "if it is done on an uninhabited mountainside, so far from anything of considerable value likely to be harmed that the risk if it does exist is not a serious one." *Id.* cmt. j. But blasting is an abnormally dangerous activity and subject to strict liability if "carried on in the midst of a city." *Id.*

This approach would be a stark departure from how our appellate courts have evaluated blasting. As our Court of Appeals has observed, Indiana courts have "applied the doctrine of strict liability for ultra-

hazardous activities in cases involving blasting operations" "[w]ithout explicitly adopting s[ection] 520." *Hedges*, 396 N.E.2d at 936 n.4. We decline to change course because Warex's proposed case-specific test for blasting cases is too amorphous and out of sync with the reason for imposing strict liability.

Start with the test's workability. Our predecessors in *Enos Coal Mining Company* specifically rejected this sort of case-specific balancing approach, explaining:

> It is also urged that in business and industry certain operations are 'necessary' for the encouragement of industrial development and that even though such business activities cause some injury to neighboring properties, a 'reasonable use' is permissible. From our viewpoint, this is to say that 'a little damage' is 'reasonable' and legal, but too much damage is 'unreasonable' and wrong. What is or is not 'reasonable' is an uncertain yardstick. Although it is a standard of conduct in some cases because of the lack of a better one, it is to be avoided, so far as possible, because of its vagueness and lack of certainty.

*Enos Coal Mining Co.*, 188 N.E.2d at 408.

That is the same sort of concern that seems to have led the American Law Institute to return, in the Third Restatement, to an approach much closer to the First Restatement. Dan B. Dobbs et al., *The Law of Torts* § 442 (2d ed. 2024) ("The Third Restatement comes closer to the first."). The Second Restatement's six factors reflect more of a "discussion agenda rather than a test or analytical tool," and as a result they will "almost inevitably promulgate[ ] uncertainty" in blasting cases. *Id.* § 443. At bottom, this approach looks "like a poorly disguised negligence regime," and "[i]f strict liability is determined by the same factors that determine negligence cases, this form of strict liability is needless at best and probably should be subjected to Occam's razor," which teaches that the simplest explanation is usually the best one. *Id.* § 442.

What's more, this approach, which balances the utility of blasting against its risks, is also out of step with the reason for imposing strict liability in blasting cases. There doesn't seem to be any dispute that blasting has enormous value to society. Our construction, transportation, and agriculture sectors depend on companies like Cave Quarries, and those companies depend on blasting. *See* Restatement (Second) of Torts § 520 cmt. i (explaining that blasting "is recognized as a proper means of excavation for building purposes or of clearing woodland for cultivation," and it is "necessary to the construction of many public and private works"). But as our predecessors explained, that is a reason for *imposing* strict liability, not *avoiding* it.

"Blasting operations are dangerous and must pay their own way." *Enos Coal Mining Co.*, 188 N.E.2d at 408; *see also*, Dobbs et al., *supra*, § 441("The idea is not necessarily to deter such activities altogether but to make them 'pay their way' by charging them with liability for harms that are more or less inevitably associated with the activity."). While a "citizen may be deprived of his home or other property by the proper exercise of the power of eminent domain," through which he receives just compensation, "it ought not to be said that [the property] can be lawfully destroyed without compensation in the interest of a mere business enterprise, simply because such enterprise is of great magnitude and general public interest." *Enos Coal Mining Co.*, 188 N.E.2d at 408. No matter how great blasting's value, that value doesn't justify permitting businesses to shift the costs of damage to "small neighboring property owners for them to bear alone." *Id.* "We can understand no sensible or reasonable principle of law for shifting such expense or loss to persons who are not involved in such business ventures for profit." *Id.* Better instead that those doing the blasting shoulder the costs of the damage they cause in the first instance and then socialize those costs through price increases in the business for which the blasting is required. *Id.*

We thus see no good reason to change course. That said, we also have no need to criticize or confirm those Indiana cases that have looked to Section 520 of the Second Restatement to determine whether other activities are abnormally dangerous in other contexts. *See, e.g., Fechtman v. U.S. Steel Corp.*, 994 N.E.2d 1243, 1247 (Ind. Ct. App. 2013) (applying the

Section 520 factors and determining that the defendant's emptying of a dust catcher machine was not an abnormally dangerous activity). Whatever utility Section 520 has in those contexts, "blasting has traditionally been considered the epitome of an abnormal or ultrahazardous activity," so for blasting we continue to take the bright-line approach reflected in the First and Third Restatements. 7 Stuart M. Speiser et al., *American Law of Torts* § 19:9 (2024); *see also* Restatement (Third) of Torts: Physical & Emotional Harm § 20 cmt. e (describing blasting as "a paradigm case for strict liability").

## III. We do not extend strict liability for blasting damage to a customer who participated in the blasting by hiring the defendant to conduct the explosion.

While we agree with Cave Quarries that we should preserve the bright-line rule that blasting is an abnormally dangerous activity subject to strict liability, that does not answer the question here: Strictly liable to whom? Cave Quarries says the answer is that a blasting company is strictly liable to anyone damaged by its blasting. Warex says that strict liability should apply to neighbors and bystanders but not one who participates in the blasting as a customer hiring the defendant to perform the blast for the customer's benefit.

The Court of Appeals appropriately recognized that whether a blasting company is strictly liable to its customer is a question of first impression. *Cave Quarries, Inc.*, 219 N.E.3d at 227. And like that court and the trial court, we conclude that a blasting company is not strictly liable to its customer but remains liable to the customer for negligence. That approach aligns with the policy underlying strict liability for blasting, and it remains consistent with the Restatement.

## A. Underlying Policy

As we explained in *Enos Coal Mining Company*, the reason we impose strict liability for blasting is because the resulting damage is a cost of doing business that should not be shifted only to "small neighboring property owners" and other bystanders "for them to bear alone" when they "are not involved in such business ventures for profit." 188 N.E.2d at 408. In the previous Indiana appellate decisions imposing strict liability for blasting, the injured plaintiffs were neighbors and bystanders who were not participating in and not intended to benefit from the blast that caused injury. But customers like Cave Quarries are not similarly situated to neighbors and bystanders regarding the benefits or burdens of blasting.

As for the benefits, the traveler in *Wright* and the nearby homeowner in *Enos Coal Mining Company* had nothing to do with, and were not the intended beneficiaries of, the blasting that led to their injuries. But customers like Cave Quarries are like the quarry and coal mining companies in those cases—they are participating in the "business ventures for profit" that require, and therefore benefit from, the blasting. *Id.* Thus, there is no inequity in them bearing the costs of their own blasting, including the damage that results despite an independent contractor exercising all reasonable care (with the contractor remaining liable for their negligence, subject to available defenses). *See also Haseman v. Orman*, 680 N.E.2d 531, 535 (Ind. 1997) ("At bottom, strict liability places the loss from an activity proven to generate risk of loss on the one who benefits from the activity rather than an innocent party.").

Indeed, Indiana law holds the customer just as responsible for damage to neighbors and bystanders as the blasting company the customer hires to conduct the explosion. *Id.* at 535 n.6 ("The employer of an independent contractor is generally not liable for the negligence of the contractor, but an exception exists for work that is intrinsically dangerous."). So, for example, Cave Quarries acknowledges that if the blast here had damaged someone else's building on a nearby property, Cave Quarries would be strictly liable for that damage even though it hired Warex as an independent contractor to conduct the explosion. Oral Argument at 8:40. For this sort of dangerous activity, the law does not permit the customer

to delegate their responsibility to an independent contractor. No matter who took the lead, both Warex and Cave Quarries undertook the blasting together, so both are strictly liable.

And as for blasting's burdens, customers like Cave Quarries again aren't similarly situated to neighbors and bystanders. We impose strict liability for blasting damage "to protect innocent third parties or innocent bystanders." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 24 cmt. a. But blasting customers are not "innocent"— they too are responsible for blasting damage. And they do not require the same protections as neighbors and bystanders because they can protect themselves.

For starters, customers choose who does the blasting. And like the quarry in *Wright* and the coal mining company in *Enos Coal Mining Company*, customers like Cave Quarries financially benefit from the blasting, so they can pass their costs on to customers through price increases in the industry that requires the blasting. Customers can also negotiate contractual protections with the blasting company, including indemnification responsibilities or insurance requirements. *Cf. Haseman*, 680 N.E.2d at 536 ("Perhaps more important, Haseman, and not the plaintiffs, was in a position to require financial responsibility of his lessee—whether in the form of insurance, indemnity or simply by careful selection of the operator."). And the price of the blasting services can be negotiated to reflect which party will ultimately be responsible for any accidental damage. Thus, customers like Cave Quarries do not need the harsher rule of strict liability to protect them from unfairly shouldering blasting costs alone.[1]

In short, tort law leaves blasting customers to bear blasting's costs because they reap its benefits too. And even beyond the protection that

---

[1] We leave open the possibility that the rule may be different in the unusual circumstance where the customer is unaware that blasting will be part of a project. *See Guido v. N.Y. Tel. Co.*, 145 A.D.2d 203, 205, (N.Y. App. Div. 1989) (allowing property owners to pursue a strict liability claim for blasting damage to their own property because the owners were unaware that their request for installation of underground utilities would require blasting).

the negligence standard continues to provide those customers, they have adequate means to protect themselves through contract law.

## B.     Restatement of Torts

Arguing that strict liability should apply for damage to customers too, Cave Quarries points us back to the Restatement of Torts, which, as we've explained, generally imposes strict liability for abnormally dangerous activities. But all three versions of the Restatement confirm that strict liability should not apply here. The First Restatement excludes strict liability for abnormally dangerous activities when the plaintiff "takes part in" the abnormally dangerous activity. Restatement (First) of Torts § 523. And "one may take part in an activity as . . . the employer of an independent contractor employed to carry it on or to do work which necessarily involves it." *Id.* cmt. c. That is precisely what happened here. Cave Quarries employed Warex as an independent contractor to conduct the blasting.

Similarly, the Third Restatement explains that strict liability does not apply to abnormally dangerous activities "if the [plaintiff] suffers . . . harm as a result of making contact with or coming into proximity to the defendant's . . . abnormally dangerous activity for the purpose of securing some benefit from that contact or that proximity." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 24. A Restatement comment anticipates the sort of case we have here, explaining that "if at the plaintiff's request the defendant blasts on the plaintiff's land," then "the plaintiff has no strict-liability claim if the blasting damages a structure on the plaintiff's property." *Id.* cmt. a.

The Second Restatement declines to treat blasting as an abnormally dangerous activity categorically, and even in circumstances where it does treat blasting as abnormally dangerous, it does not exclude strict liability when the plaintiff is closely associated with the activity. But the Second Restatement outlines an "assumption of risk" defense: "The plaintiff's assumption of the risk of harm from an abnormally dangerous activity bars his recovery for the harm." Restatement (Second) of Torts § 523. And the comments confirm the defense would apply here. They explain that

"[t]he risk is commonly assumed by one who takes part in the activity . . . *as the employer of an independent contractor hired to carry on the activity or to do work that must necessarily involve it*." *Id.* cmt. d (emphasis added). More specifically, "a possessor of land who expressly agrees that the defendant may conduct blasting operations in close proximity to his land, with knowledge of the abnormal risk of harm to his person or property from the operations, can not recover when the activity miscarries and the harm results." *Id.* cmt. b.

Again, Cave Quarries hired Warex as an independent contractor to perform the blasting, and there is no dispute that Cave Quarries is generally familiar with the risks of blasting that make it an abnormally dangerous activity (even if Cave Quarries was not familiar with the more specific risk that an undiscovered mud seam could lead to the explosion that leveled its asphalt plant). Appellant's Reply Br. at 41 (acknowledging that the "depositions of Cave employees show that they were aware that blasting can be dangerous," though emphasizing the employees relied on Warex to ensure a safe blast); *see also* Restatement (Second) of Torts § 523 cmt. c ("The risk inseparable from the great majority of abnormally dangerous activities is, however, a matter of such common knowledge and general notoriety that in the absence of special circumstances, as when he has been misled by the defendant or when he is too young to appreciate the risk, a plaintiff may often be found to have the knowledge notwithstanding his own denial."). Cave Quarries asserts that Indiana has not adopted the assumption of risk defense in Section 523 of the Second Restatement and that the general rule governing strict liability from Section 519 should govern here. But the Second Restatement instructs that Section 519 "should be read together with §§ 520 to 524A, by which it is limited." *Id.* § 519 cmt. a.

So under any version of the Restatement, Cave Quarries cannot recover under a strict liability standard. And that conclusion is in line with the other courts that have squarely considered this question. *See Cemex, Inc. v. LMS Contracting, Inc.*, No. 3:06CV-124-H, 2009 WL 3171977, at *5 (W.D. Ky. Sept. 28, 2009) (predicting the "Kentucky Supreme Court would not extend the strict liability doctrine" to blasting cases where the injured party ordered the blasting operation); *Carroll-Boone Water Dist. v. M. & P.*

*Equip. Co.*, 661 S.W.2d 345, 351 (Ark. 1983) (explaining that strict liability does not apply when the plaintiff consents to blasting on their property); *M. W. Worley Const. Co. v. Hungerford, Inc.*, 210 S.E.2d 161, 164 (Va. 1974) (adopting strict liability for blasting injuries with an exception for plaintiffs who take part in the blasting); *E. I. Du Pont De Nemours & Co. v. Cudd*, 176 F.2d 855, 860 (10th Cir. 1949) (holding that "the doctrine of liability without fault" "does not apply to cases where injury results to those who have reason to know of the risk which makes the undertaking ultra hazardous"). But that doesn't mean Cave Quarries has no way to recover from Warex through a tort claim. While those who participate in the blasting cannot recover through strict liability, that just returns them to the default standard of negligence, subject to comparative fault. Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 24 cmt. a (explaining that "the denial of strict liability in such situations confirms the relevance and appropriateness of negligence liability"); *see also* Dobbs et al., *supra*, § 446 ("The Third Restatement now recognizes contributory fault of a plaintiff as grounds for reducing the plaintiff's recovery under comparative responsibility principles. Assumption of risk has no status separate from contributory fault and is subject to the same reduction-of-damages rule.").

That is no small thing for Cave Quarries. It alleges that "[a]pplicable law required Warex to bear responsibility for assessing geological factors and planning the blast design," and "[f]actors such as placement of shot holes and the amount of explosives to use were ultimately within Warex's control." Appellant's Br. at 15.[2] That is the language of negligence. So if Cave Quarries can prove its claim that Warex did not exercise reasonable care given the circumstances, it can still recoup its loss from Warex. And

---

[2] Cave Quarries argues that administrative regulations governing Warex's responsibilities inform the standard of care, but it acknowledges that neither the Indiana Code nor the Indiana Administrative Code compel the imposition of strict liability. Appellant's Reply Br. at 33 ("To be clear, Cave is not arguing that Indiana's blasting regulations dictate strict liability . . . ."); Oral Argument at 2:07–3:15. Warex agrees that the Administrative Code may "be considered as evidence of what constitutes reasonable conduct or a departure therefrom." Appellee's Br. at 31.

when a jury considers the parties' comparative fault, it can consider any proof Cave has for its argument that "Warex was the only party with the specialized knowledge" of the risks in blasting so close to the asphalt plant. *Id.* at 21. Cave Quarries merely can't recover through tort law if Warex did take all reasonable precautions with the blast given the circumstances.

A final word about the breadth of our holding. There is very little daylight between our analysis and Judge Kenworthy's thorough, well-reasoned opinion for the unanimous Court of Appeals panel. The only material difference—and the reason we don't adopt that opinion as our own—is that one could read the Court of Appeals' opinion as applying a negligence rather than strict liability standard based on "the unique circumstances of this blast," which included that "Cave Quarries decided where the blast would take place" on its property, and Cave Quarries "asked for a larger blast on March 3 because of concerns over the cost of multiple smaller blasts." *Cave Quarries, Inc.*, 219 N.E.3d at 228. That might suggest that a trial court should take the sort of case-by-case approach that we rejected above.

Instead, we maintain the bright-line rule that a party is strictly liable for the damage its blasting causes to neighbors and bystanders, but not to one who hires the blaster. As we've explained, the contours of that rule in the blasting context are well stated in the First and Third Restatements. And while facts like the degree to which Cave Quarries directed Warex about where, how, and why to conduct the blast are not relevant to determining which standard governs—strict liability or negligence—they remain relevant to whether Warex was negligent and the parties' comparative fault.

# Conclusion

For these reasons, we affirm the trial court's denial of Cave Quarries' motion for summary judgment, and we remand for the trial court (1) to enter judgment for Warex and against Cave Quarries on Count I of Cave Quarries' Complaint for Damages alleging a strict liability claim, and (2) to proceed on Cave Quarries' negligence claim in Count II.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Margaret M. Christensen
S. Katherine Jackson
Dentons Bingham Greenebaum, LLP
Indianapolis, Indiana

James C. Tucker
Tucker and Tucker, P.C.
Paoli, Indiana

ATTORNEYS FOR APPELLEE
Brett T. Clayton
Reminger Co., LPA
Indianapolis, Indiana

Alex M. Beeman
Reminger Co., LPA
Evansville, Indiana